Argued December 19, 1957, reversed and remanded February 11, 1958

# STATE OF OREGON *v.* POWELL
### 321 P. 2d 333

*Burton J. Fallgren*, Portland, argued the cause and filed a brief for appellant.

*Winston L. Bradshaw*, District Attorney, Oregon City, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and ROSSMAN, BRAND and McALLISTER, Justices.

PERRY, C. J.

The defendant was indicted by the grand jury of Clackamas county on May 24, 1956, for violation of ORS 474.170, and on conviction was sentenced to a term of three years in the state penitentiary. The charging part of the indictment reads as follows:

"The said Dorothy Margaret Powell on or about the 25th day of July, A.D., 1954, in the said County of Clackamas and State of Oregon, then and there being, did then and there unlawfully and feloniously attempt to obtain a narcotic drug, to-wit: Dilaudid, by the use of a false name and address, to-wit: Mrs. Ed Bartlett, given name Margaret, 1415 Thiessen Road, Milwaukie 22, Oregon, while applying to a physician, to-wit: Dr. Jere J. Nelson, for a prescription for dilaudid tablets, when so giving said false name and false address, said act of defendant being, * * *"

Trial was had on the indictment on October 3, 1956, and a verdict of guilty was returned by the jury. The defendant appeals.

In this opinion we will refer to the plaintiff as the State.

The defendant in her brief argues numerous assignments of error, but, as we view the case, it is necessary to discuss but a single assignment. We will content ourselves with the question of whether or not error was committed in the trial court's failure to sustain the defendant's demurrer to the State's evidence, the demurrer being treated as the equivalent of a motion to direct a verdict of not guilty.

The undisputed facts in this case show that on

July 20, 1954, defendant presented herself at the office of Dr. Jere J. Nelson, complaining of "severe pain in the back and leg and in the abdominal area." At this time the doctor made a general physical examination, finding that the defendant's "blood pressure was moderately increased, there was tenderness over both kidney areas, and a urine specimen showed a considerable amount of blood." The doctor prescribed antibiotics, a sedative, and a narcotic for pain, dilaudid. On July 23, 1954, the defendant again came to Dr. Nelson's office complaining of pain and on this occasion he merely prescribed the narcotic dilaudid for the pain. Subsequently, and on July 25, 1954, the defendant called the doctor by telephone and told him she had an increase of symptoms "for which I had seen her the two previous times and that she was out of medicine." It appears at this time the doctor was suspicious of the amount of dilaudid the defendant was using and, after advising the defendant to come to his office, he called to his office Mr. Young, a police officer of the Oregon City Police Department. The defendant came to the doctor's office and the doctor took her into his private office where she explained "she thought she had passed a kidney stone during the night and had a marked increase in her abdominal pain and pain with urination, and had passed more blood or was passing more blood in her urine." The doctor explained to her that on the two previous visits he had "given her more dilaudid than was customary and, also, more than was safe; that it would be impossible under ordinary circumstances to use that much in such a short time." He explained that he did not feel he would be justified in giving her any more, and upon his refusal to give the defendant more of the drug she left his office. There is no question but that on the de-

fendant's last visit she was seeking a prescription for more of the narcotic.

On the occasion of the defendant's first visit to the doctor's office, and before examination and prescribed treatment, she had given to the doctor's receptionist the name "Mrs. Ed Bartlett" and her address as "1415 S. E. Thiessen Road, Milwaukie." She had also told the doctor her given name was "Margaret." On her last call at the doctor's office when called she responded to the name of Bartlett. The doctor at all times prescribed medicines and treated the defendant under the name of Bartlett. The evidence discloses there was no such address on Thiessen Road, and there is evidence that her true name is Dorothy Margaret Powell.

The sole question is whether or not these facts constitute a violation of ORS 474.170. The portion of the statute material to this case is as follows:

"(1) No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the administration of a narcotic drug:

\* \* \* \* \*

"(d) By the use of a false name or the giving of a false address."

And ORS 474.990 reads as follows:

"Any person violating any provision of this chapter shall:

"(1) Upon conviction, be punished by a fine not exceeding $5,000, or by imprisonment in the state penitentiary for not exceeding 10 years, or both."

■ It is a well-established rule that statutes treating of the same subject matter are to be construed together. *State of Oregon v. Buck,* 200 Or 87, 262 P2d 495.

ORS 475.060 reads as follows:

"(1) No person shall use any fraud, deceit, misrepresentation, subterfuge, conceal a material fact, use a false name or give a false address in obtaining treatment in the course of which narcotic drugs are prescribed or dispensed or in obtaining any supply of such drugs. No such action shall be deemed a privileged communication.

 * * * * *

"(4) Violation of this section shall be punished, upon conviction, by a fine of not more than $500 or by imprisonment in the county jail not to exceed one year, or both."

■ Since both ORS 474.170 and ORS 475.060 were reenacted by the legislature in the adoption of the Oregon Revised Statutes, we can but conclude that neither was to supersede the other and each was designed to meet a separate requirement for policing the use and dispensation of narcotics.

The State urges that ORS 474.170 has the intent and effect, among other things, of combatting the activities of the "floater,"—the person who, desirous of obtaining narcotic drugs, goes from physician to physican complaining of an ailment, real or imaginary, and gives a different name at each stop. It can readily be seen that this practice would to a large extent render ineffectual certain requirements of the recording laws in that it would hinder the detection of the illicit user. Thus, the State argues, an individual with a genuine or contrived ailment who goes to a doctor and requests a prescription containing narcotics is guilty of an attempt to obtain narcotics by the use of a false name, and that an essential element of the crime, therefore, is the visit to the physician with the intent to obtain the narcotic. This was the theory upon which this case was prosecuted. In our opinion, after considering

ORS ch 474 in conjunction with ORS ch 475, the State's theory, under the facts of this case, cannot be sustained.

■ It is established law that if there can be found no rational basis for distinguishing the acts committed by one person from the acts committed by another, the acts of one cannot be treated solely as a felony and the acts of the other solely as a misdemeanor. The equal protection clause of the Fourteenth Amendment prohibits such legislation. Thus, if section (d) of ORS 474.170 prohibits the same acts as ORS 475.060, insofar as the use of a false name and address is material, the same acts without distinguishing criteria must be as to all persons treated either as a felony or as a misdemeanor. They cannot constitute both. *State of Oregon v. Pirkey*, 203 Or 697, 281 P2d 698. This is not to be construed as prohibiting the right of a legislature to permit a trial court in its discretion to pass different sentences upon different offenders for the same crime.

■ We cannot attribute to the legislature an intention to pass unconstitutional legislation. *Smallman v. Gladden,* 206 Or 262, 291 P2d 749.

■ The facts set out above, if believed, will establish a violation of ORS 475.060. The defendant used a false name and address "in obtaining treatment in the course of which narcotic drugs" were prescribed. A return to the doctor's office on the 25th of July could be attributed to nothing more than seeking a continuance of the treatment recommended by the doctor. Therefore, the evidence in this case clearly shows acts in violation of the statute which constitute a misdemeanor.

It appears to be the defendant's contention that merely procuring a prescription calling for a narcotic

by using a false name or address is not within the contemplated prohibition of ORS 474.170; that the use of a false name to obtain a prescription is not specifically prohibited by the wording of the statute and should not be implied, and, therefore, the acts of the defendant did not constitute this crime since it is the use of the prescription not the manner of obtaining it that violates the statute.

ORS ch 474, with but few variations, is an adoption of the Uniform Narcotic Drug Act. The identical provisions are found in the statutes and context of all but five states in the Union.

■ It is a cardinal rule of statutory construction that the courts should look to the entire act in determining the intent of the legislature. *Sunshine Dairy v. Peterson et al.,* 183 Or 305, 193 P2d 543; *State ex rel. Peterson v. Woodruff,* 179 Or 640, 173 P2d 961.

■■ The common law requiring strict interpretation and construction of penal statutes has been abolished in this jurisdiction. ORS 161.050. The goal sought is a sensible construction according to the fair import of the terms of the statute with a view to effect its objects and promote justice. *State of Oregon v. Smith,* 198 Or 31, 255 P2d 1076. Looking at ORS ch 474 as a whole, it is plain that the purpose of the entire act is not to prohibit any and all use of and traffic in narcotic drugs, but is to regulate and control such use and traffic. A substantial portion of the statute is exclusively devoted to the procedure of keeping records of the narcotics and its users which are vital to orderly administration and enforcement. See ORS 474.060, ORS 474.090, ORS 474.100.

The purpose and need for accurate recordation of sales and uses of narcotics was early recognized in this state. In construing § 3664, Hill's Code, relating to

records of prescriptions required to be kept by physicians, this court said in *State v. Jones*, 18 Or 256, 260, 22 P 840:

"\* \* \* This statute was designed to repress a growing evil, and to accomplish that end it aimed to put the use of the enumerated drugs under legal surveillance; that is, under the control of agents, which the law appoints on their application for that purpose, to require them to make and keep certain records in relation to the sales or prescriptions, and to hold them responsible for the neglect of those duties. These requirements were necessary to enable the officers of the law to trace the illegal sale or use of the prohibited drugs and to fix the responsibility upon the proper party. \* \* \*"

The distinction to be drawn between ORS 474.170, which makes it a felony to obtain a narcotic by the use of a false name or the giving of a false address, and ORS 475.060, which makes it a misdemeanor to use a false name or give a false address, in obtaining treatment in which narcotic drugs are prescribed or dispensed, lies in the use of the words in the felony statute "*to obtain a narcotic by the use of.*" These words must be construed as meaning "by means of"; that is, the using of the false name by an accused is a factor in obtaining or attempting to obtain the drug, while in ORS 475.060 reliance upon the false name or address plays no part in the offense. The crime arises under ORS 474.170 when, by reason of the use of the false name or address, the accused hopes to or does accomplish procurement of the narcotic itself. See *State v. Harkness,* 1 Wn2d 530, 96 P2d 460.

The evidence in this case discloses that the doctor in prescribing the narcotic to the defendant on the 20th and 23rd of July put no reliance in the name or address of the defendant whatsoever, but relied solely

upon the defendant's representations of her physical condition and his own examination of her condition. When she returned on the 25th of July, the doctor did not refuse her a prescription because of her name or the address, but because he had already prescribed more than was proper or necessary in the treatment of her condition. In other words, the defendant as a person and not because of name or address received the very narcotics intended by the doctor. Thus the false name or address was immaterial.

ORS 475.060 was intended to reach the very problem which the State argues ORS 474.170 was designed to accomplish,—the "floater" who by the use of a false name and address attempts to prevent identification of himself as an addict.

There is no evidence in this case that the defendant attempted to or did receive a narcotic because of her use of a false name or address. The most than can be said is she attempted to conceal the fact of her addiction.

While the State intended the indictment should be construed as stating a felony under ORS 474.170, the indictment, which is not attacked, is also capable of sustaining a conviction for the misdemeanor described under the provisions of ORS 475.060.

Under the circumstances, the indictment being sufficient and the evidence conclusive in showing a violation of the misdemeanor statute, the sole error, as we view this record, now lies in sentence passed on the defendant.

The judgment is reversed and the cause is remanded to the trial court with directions to resentence the defendant in accordance with the provisions of section (4), ORS 475.060.