Argued March 19, affirmed May 21, petition
for rehearing denied June 23, 1970

STATE OF OREGON, *Respondent, v.*
DAVID LIVINGSTON, *Appellant.*

469 P2d 632

*James R. Carskadon, Jr.,* Milwaukie, argued the cause for appellant. On the brief were J. Raymond Carskadon, Portland, and Redman & Carskadon, Milwaukie.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

Defendant was convicted of attempting to unlawfully obtain a narcotic drug and sentenced to three years' imprisonment. He asserts on this appeal that (1) the court erred in denying his motions for acquittal, and (2) the court's instructions were erroneous in certain particulars hereinafter mentioned.

At the conclusion of the state's case defendant moved for a judgment of acquittal under ORS 136.605. Upon denial of this motion, defendant rested his case without putting on any evidence and then moved for a directed verdict of acquittal. This motion was also denied.

■ In passing upon the denial of these motions, an appellate court should review the evidence in the light most favorable to the state and should sustain the trial court's action if there is any substantial evidence to support the verdict. *State v. Shipman*, 2 Or App 359, 468 P2d 921 (1970).

The indictment against defendant reads in part as follows:

> "DAVID LIVINGSTON is accused by the Grand Jury of Multnomah County and State of Oregon, by this indictment of the crime of ATTEMPTING TO UNLAWFULLY OBTAIN A NARCOTIC DRUG committed as follows:
>
> "The said DAVID LIVINGSTON on or about the 26th day of August, A.D. 1968, in Multnomah County and State of Oregon, did unlawfully and feloniously by fraud, deceit, misrepresentation and subterfuge, attempt to obtain a certain narcotic drug, to-wit, Numorphan, from one John N. Kaegi * * * *"

The evidence indicates that at the time and place charged, defendant, who had previously been a customer of the drug store, presented a prescription for a drug known as Numorphan to a pharmacist, John N. Kaegi, at Kaegi's Laurelhurst Pharmacy in Portland. Kaegi testified that he was apprehensive about the prescription for the following reasons: it was for Numorphan, a Class A narcotic; the University of Oregon Medical School did not normally prescribe this drug

and did not normally issue prescriptions totally hand-written in the form in which this one was presented to him; and he did not recognize the doctor's name, which was T. Morrison. He asked defendant to wait while he checked on the prescription. Upon checking Kaegi learned that there was no Dr. Morrison registered with the medical school so he told defendant he would have to wait until the medical school called back about the prescription. At this time defendant stated he could not wait, took back the prescription form and left the pharmacy. Kaegi testified defendant had never before requested the return of a prescription and that he said he would see if he couldn't get the person it was for to get it filled. He was in the pharmacy about 15 minutes.

The prescription was on a University of Oregon Medical School blank, was entirely handwritten and purported to prescribe Numorphan tablets for one Donna Livingston. Defendant's wife's name was Donna. The University of Oregon Medical School had no record of a patient named Donna Livingston. Evidence from a dental school official indicated a Donna Livingston had been a patient at the dental school clinic three months after the offense charged here but no medication had been prescribed for her and the dental school records indicated defendant was her husband. The evidence disclosed that there was no Dr. Morrison connected with the University of Oregon Medical School or University of Oregon Dental School.

■ The foregoing facts can be summarized as follows: Class A narcotic; unrecognized doctor; handwritten University of Oregon Medical School prescription; unusual drug for medical school to prescribe; defendant's wife not a medical school patient; defendant's

novel request for return of prescription; and the pharmacist's apparent questioning of the prescription's validity. These facts, which culminated in defendant's departure with the prescription form, permit a reasonable deduction by the jury that the prescription was false and defendant knew it.

■ The defendant contends also under this assignment of error that there is no evidence in the record to show that Numorphan qualifies as a narcotic drug under the statutes. ORS 474.010 (18) states in part:

> " 'Narcotic drugs' means * * * opium * * *."

ORS 474.010 (12) defines opium as follows:

> " 'Opium' includes morphine, codeine and heroin, and any compound, manufacture, salt, derivative, mixture or preparation of opium."

A police chemist with a bachelor's degree in chemistry and 21 years' experience in police laboratory work testified that Numorphan was derived from thebaine, one of the constituent elements of opium. Thus it comes within the above definition of opium.

The defendant's second assignment of error asserts that the trial court erred in failing to instruct the jury as to the meaning of the words "fraud, misrepresentation, deceit, and subterfuge" which appeared in the indictment. Defendant contends that the above words should be defined to the jury by the trial court where they have a technical meaning in law. The state contends that the terms are used in their ordinary nontechnical sense, and that it is not necessary to instruct the jury as to their meaning in an indictment drawn under ORS 474.170. This statute reads in pertinent part as follows:

> "(1) No person shall obtain or attempt to obtain

a narcotic drug, or procure or attempt to procure the administration of a narcotic drug:

"(a) By fraud, deceit, misrepresentation or subterfuge * * *."

In ruling on the request to define for the jury the four words in (1)(a) above, the trial court said "* * * the Court will not define words which are within the common knowledge of people."

■■■ The Oregon Supreme Court has recognized that ORS ch 474 should be given a sensible construction according to the fair import of its terms, with a view to effect the object of regulating and controlling traffic in narcotic drugs. See *State v. Powell*, 212 Or 684, 692, 321 P2d 333 (1958). Although the four words do have precise technical meanings in some legal contexts, their less precise everyday meaning is best suited for effectuation of this statutory purpose. This, combined with the fact that ORS 474.170 uses a number of roughly synonymous terms, leads us to conclude that the object of the statute is to proscribe the obtaining of narcotic drugs through any untruthfulness or non-disclosure, whether or not the means employed constitutes "fraud," "deceit," "misrepresentation," or "subterfuge" in the technical sense. We find this assignment of error without merit.

■ Defendant's third assignment of error complains that the action of the court in reading to the jury the whole of subsections (1) and (5) of ORS 474.170 was confusing and misled the jury as to the scope of the charge. The instruction was given as follows:

" 'No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the administration of a narcotic drug:

" 'By fraud, deceit, misrepresentation or subterfuge; or

" 'By the forgery or alteration of a prescription or of any written order; or

" 'By the concealment of a material fact; or

" 'By the use of a false name or the giving of a false address . . .

" 'No person shall make or utter any false or forged prescription or false or forged written order.' "

He argues that the instruction in the language as quoted constituted an abstract instruction. He further argues that although the trial court clearly instructed the jury that they must find:

"* * * that this defendant, David Livingston, did unlawfully and feloniously by fraud, deceit, misrepresentation and subterfuge attempt to obtain a narcotic drug from one John N. Kaegi.",

the jury may have been misled into disregarding this instruction and based its verdict on something other than the crime charged in the indictment.

The law on abstract instructions is clear. In *State v. Townsend*, 237 Or 527, 392 P2d 459 (1964), the court said, at 530:

" '* * * Courts should confine their charges to the facts of the case; but an abstract charge that states the law correctly cannot be the basis for a reversal of the judgment appealed from, unless it appears to the appellate court that it did mislead, or may have misled, the jury to the prejudice of the appellant.' *State v. Selby*, 73 Or 378, 389, 144 P 657."

In *Olson v. McAtee*, 181 Or 503, 182 P2d 979 (1947), the court said, at 520:

"* * * [I]t is well settled that the giving of an abstract instruction is cause for reversal only

when it is reasonably apparent that the jury has been misled. *State v. Weston*, 155 Or 556, 581, 64 P. (2d) 536, 108 A. L. R. 1402. * * *"

The instructions must be considered as a whole. *State of Oregon v. Patton*, 208 Or 610, 613, 303 P2d 513 (1956). "The jury is presumed to have followed the court's instruction." *State v. Oland*, 1 Or App 272, 280, 461 P2d 277 (1969). There is no evidence that the jury disregarded the clear instructions of the court, and when the instructions are considered as a whole they adequately limit the offense to the allegations of the indictment. This assignment is without merit.

Affirmed.