Argued October 27, affirmed November 16, petition for rehearing denied December 8, petition for review denied December 30, 1970

STATE OF OREGON, *Respondent, v.*
PETER LAUREL, *Appellant.*

476 P2d 817

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Robert M. Burrows,* District Attorney, Grants Pass,

argued the cause for respondent. With him on the brief was Michael D. Henderson, Deputy District Attorney, Grants Pass.

Before Schwab, Chief Judge, and Foley, Fort and Branchfield, Judges.

FORT, J.

The defendant, Peter Laurel, was convicted pursuant to ORS 163.250 of assault with a dangerous weapon, received a two-year suspended sentence and was placed on two years' probation. From this conviction he appeals, assigning as sole error the circuit court's denial of defendant's motion for a judgment of acquittal.

Four men—the defendant, Gulledge, Wilburn and Thomas—jointly occupied a piece of property in the Takilma area of the Illinois Valley in Josephine County, Oregon. Thomas held its legal title, although he and Wilburn in fact owned the property together. Located on the land was a dwelling, an outhouse and a camper-bus. The condition of the dwelling, because of inadequate plumbing and sanitary facilities, came to the attention of the  Josephine County Health Department.

On four occasions prior to the alleged assault the county sanitary supervisor entered the land without a warrant to inspect the sanitary and plumbing facilities from outside the buildings. Consent to such entry was never obtained. He made recommendations to Thomas on how to cure the observed defects. None of these were followed. On the third visit, the county sanitary supervisor, accompanied by the county plumbing inspector, informed Wilburn and the defendant in

the absence of Thomas that the latter had 30 days in which to correct certain specified defects in order to comply with the county and state codes. About five days later, the same inspectors returned to Mr. Thomas's property, accompanied by a deputy sheriff, in order to determine whether the defects were corrected. Thomas requested the two inspectors and the deputy sheriff to leave. They complied. Subsequently they returned again and entered the property. This time they were accompanied by the victim, a deputy sheriff. They were confronted by Thomas approximately 100 feet from the dwelling and ordered to leave forthwith, unless they possessed a search warrant. The sanitary supervisor and the plumbing inspector had been advised by the Josephine County district attorney's office that a search warrant was not legally required and that sanitary inspectors may conduct outside inspection upon private property without one. They communicated this information to Thomas, as well as informing him that their investigation was to be conducted at a distance without the need of entering any structure. They refused to leave the premises.

Thomas then summoned Wilburn from the dwelling. The ground sloped downward from the dwelling area toward where the inspectors and the deputy sheriff were standing. Wilburn appeared, wearing a gun belted around his waist, and took a position above the deputy and the inspectors approximately 30 feet from the dwelling. Gulledge appeared next from the house carrying a double-barreled shotgun. He positioned himself near the house, kneeling, with the shotgun aimed at the inspectors. Lastly, the defendant came from the dwelling carrying a revolver, and positioned himself approximately 40 to 50 feet from

the dwelling at the point where the ground sloped toward the visitors.

Neither the sanitary supervisor nor the plumbing inspector were armed, and the deputy sheriff, though armed, had his service revolver in its holster at all times. The deputy sheriff, observing that the defendant had his revolver pointed toward the inspectors and himself, walked toward the defendant, told him that he was under arrest for pointing a firearm at an officer, and ordered the defendant to put down his firearm. When he was within a very few feet of the defendant, the deputy slipped on the wet incline. At this point the defendant struck the deputy over the head with the butt of the revolver. The defendant then fled from the area, and was subsequently arrested several days later. At no time did the deputy sheriff draw his weapon.

The trial court ruled that the deputy sheriff and the two inspectors were trespassers as a matter of law. *Camara v. Municipal Court*, 387 US 523, 87 S Ct 1727, 18 L Ed 2d 930 (1967); *See v. Seattle*, 387 US 541, 87 S Ct 1737, 18 L Ed 2d 943 (1967).

In considering a motion for judgment of acquittal we view the evidence in the light most favorable to the state. *State v. Klutke*, 245 Or 302, 421 P2d 956 (1966); *State v. Shipman*, 2 Or App 359, 468 P2d 921 (1970); *State v. Livingston*, 2 Or App 587, 469 P2d 632 (1970).

The problem here presented concerns first the right of a landowner or occupant to act in defense of his property, and second of his person. *Stowell v. Evans*, 211 Cal 565, 296 P 278 (1931).

In *State v. Weber*, 246 Or 312, 423 P2d 767,

cert den 389 US 863, 88 S Ct 121, 19 LEd 2d 131 (1967), the Supreme Court said:

"Perkins, in his treatise on criminal law, states at page 917:

" 'In the absence of statutory authority the use of force intended or likely to cause death or great bodily injury is never authorized for the defense of property (as such).'

"A similar statement of the law in this regard is found in 1 Wharton, Criminal Law & Procedure, at page 709:

" 'The use of a deadly weapon in the protection of property is generally held, except in extreme cases, to be the use of more than justifiable force, and to render the owner of the property liable criminally for the assault * * *.'

"The 'extreme cases' ordinarily are those in which either the home is intruded upon or in which there is an imminent threat to person as well as property. *State v. Erickson*, 57 Or 262, 110 P 785, 111 P 17 (1910); 1 Wharton, Criminal Law & Procedure 709; 6 CJS 951, Assault and Battery § 94; Annotation, 100 ALR2d 1021, 1026." 246 Or at 319-20.

See also, *State v. Bartmess*, 33 Or 110, 54 P 167 (1898); *State v. Trent*, 122 Or 444, 252 P 975, 259 P 893 (1927); *Eldred v. Burns*, 182 Or 394, 182 P2d 397, 188 P2d 154 (1946); *Scheuffle v. Newman*, 187 Or 263, 210 P2d 573 (1949).

At 6 Am Jur 2d 77, Assault and Battery § 88, it states:

"In defending one's property the owner may only use such force as appears reasonably necessary for that purpose * * *.

"Ordinarily, whether excessive force has been used in defense of property is a question of fact to be determined by the jury."

In *Coghlan v. Miller*, 106 Or 46, 211 P 163 (1922), the Supreme Court said:

"* * * [A] loaded Winchester rifle used within striking distance, either as a club or as a firearm, is a dangerous weapon as a matter of law * * *." 106 Or at 50.

Whether or not reasonable force was used by the defendant in defense of the property on the foregoing facts was clearly a question for the jury.

Defendant contends also that he was defending his person from an imminently threatened assault by the deputy sheriff who was advancing to place him under arrest.

The nature and extent of the force a person may employ in defending himself against another has recently been discussed in *State v. Hansen*, 3 Or App 378, 474 P2d 17 (1970). In that case we held that whether the response of a defendant in using a knife to defend himself was reasonable under all the circumstances was a question "within the sole province of the jury in a criminal case."

The issues were for the jury. The motion for judgment of acquittal was correctly denied.

The judgment is affirmed.

SCHWAB, C. J., specially concurring.

I concur in the above opinion because of two special circumstances involved.

(1) The person assailed was dressed as, and was known to the defendant as a police officer, and (2) at the time of the occurrence in question it was clear to the defendant and his companions that they had nothing to fear by way of injury to person or

property. If one or both of these factors were not present, it might be seriously argued that as a matter of law the force used to protect against unwarranted intrusion was justified.

The Oregon Supreme Court has recognized a distinction between aggression by a person other than a police officer, and an attempted unlawful arrest by a known officer with nothing to be reasonably apprehended beyond a mere temporary detention. In *State v. Meyers*, 57 Or 50, 56, 110 P 407 (1910), the court said:

"* * * Thus where the arresting party himself uses a deadly weapon or signifies his immediate intention to do so, or where an unauthorized person, being armed, attempts to break into one's dwelling to make an unlawful arrest, or where it is attempted in such a way as to put one in fear of death or great bodily harm, in such rare instances one may be justified in using a deadly weapon. But we wish to be understood as holding emphatically that, where the attempted arrest is made by a known officer, and there is nothing to be apprehended beyond a mere temporary detention, the question of the right of such officer cannot be tried out with a pistol."

The Proposed Oregon Criminal Code, prepared by the Criminal Law Revision Commission, recognizes the distinction postulated by *State v. Meyers*, supra. The Commission, in its Commentary on p 31 of its Final Draft and Report, dated July 1970, cites *State v. Meyers*, supra, and cites with approval the following from Perkins, Criminal Law 997 (2d ed 1969):

" 'At common law any unlawful arrest was a trespass which could be resisted by whatever non-deadly force reasonably seemed necessary to retain or regain the liberty of the arrestee. It seems, however, that when an arrest is being made by a known peace officer, any disagreement as to the

authority to make the arrest should be settled in court rather than by violence on the street. Hence the modern trend is in the direction of some such statutory provision as this: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest." In any event if the unlawful arrest is attempted under circumstances which obviously threaten no more than a very temporary deprivation of liberty, the use of deadly force in resistance is not privileged; but if the unlawful manner of the arrest reasonably leads the arrestee to believe he is the victim of a murderous assault, or of kidnapers, homicide committed by him will not be criminal if he uses no more force than reasonably appears to be necessary under the circumstances.' "

Accordingly, the Criminal Law Revision Commission has incorporated into its proposed legislation the following:

"Section 32. A person may not use physical force to resist an arrest by a peace officer who is known or reasonably appears to be a peace officer, whether the arrest is lawful or unlawful." Proposed Oregon Criminal Code, 31 (1970).