Argued September 18, affirmed November 10, petition for
rehearing denied November 30, 1972, petition
for review denied January 4, 1973

# STATE OF OREGON, *Respondent, v.* FRED C. KOPPENHAFER (No. 4753), *Appellant.*

502 P2d 610

*Ronald L. Bryant,* Redmond, argued the cause for

appellant. With him on the briefs were Larkin, Bryant and Edmonds, Redmond.

*John W. Burgess,* Special Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendant, convicted of the sale of a dangerous drug under former ORS 475.100, appeals from the resulting judgment. He contends it was error to deny his motion for judgment of acquittal.

Briefly summarized, there was evidence which showed that an undercover narcotics officer asked defendant, who he believed was dealing in narcotic drugs, to obtain some narcotic drugs for him. The officer and defendant then drove to a residence belonging to persons known to defendant. Defendant took money from the officer, went into the residence and returned with amphetamines, which he delivered to the officer.

Defendant asserted that as a matter of law this established that he was not a seller at all, but was at most an agent for the buyer of amphetamines.

Sale is defined under ORS 474.010(10):

"'Sale' includes barter, exchange or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employe."

ORS ch 474 is generally an adoption of the Uniform

Narcotic Drug Act. *State v. Powell,* 212 Or 684, 692, 321 P2d 333 (1958). We construe *Powell* as indicating that ORS ch 474 and former ORS ch 475 should be read *in pari materia.* Thus we conclude that the definition of "sale" found in ORS 474.010(10) should be applied to a sale under former ORS 475.100.[①]

In *People v. Shannon,* 15 Ill 2d 494, 496-97, 155 NE2d 578 (1959), the Illinois Supreme Court said:

"* * * We interpret the meaning of the word 'sale,' as defined by the act, to be much broader in scope than that usually given to it in other branches of the law. Admittedly, the defendant took the role of at least an agent, and the act specifically declares an agent in a narcotics transaction to be a seller. We are of the opinion that the definition shows a legislative intent that the act of a person whether as agent, either for the seller or the purchaser, or as a go-between, in such a transaction constitutes a sale. Since the agency was admitted and proved, the conviction under counts for dispensing and selling was established beyond a reasonable doubt."

In *State v. Livingston,* 2 Or App 587, 592, 469 P2d 632 (1970), we said:

"The Oregon Supreme Court has recognized that ORS ch 474 should be given a sensible construc-

---

[①] We note that the new 1971 Criminal Code obviates the possible confusion here urged by adoption of ORS 167.202(3) which now provides that in offenses involving narcotics and dangerous drugs:

" 'Furnishes' means to sell, barter, exchange, give or dispose to another, or to offer or agree to do the same, and includes each such transaction made by any person, whether as principal, proprietor, agent, servant or employe." ORS 167.202(3),

together with ORS 167.207(1), which provides:

"A person commits the crime of criminal activity in drugs if he knowingly and unlawfully manufacturers [sic], cultivates, transports, possesses, furnishes, prescribes, administers, dispenses or compounds a narcotic or dangerous drug."

tion according to the fair import of its terms, with a view to effect the object of regulating and controlling traffic in narcotic drugs. See *State v. Powell,* 212 Or 684, 692, 321 P2d 333 (1958). * * *"

Defendant here did not simply introduce the undercover agent to a seller who then dealt with the police agent, as in *Commonwealth v. Harvard,* 356 Mass 452, 253 NE2d 346 (1969), upon which he relies. Here the undercover agent was not present in the house at any time. He never saw or talked to the persons with whom the defendant dealt. One of the witnesses in describing defendant's activities testified:

"A [BY TERRY AYRES]: * * * Ralph [the undercover agent] stayed out in the car. And he [the defendant] wanted to know if he could get some bennies, and so he got five-dollars' worth. And, well, first of all, it was for Ralph. And, well, Ralph didn't want to come in, I guess, evidently, because he didn't want to be in this hassle or static. So, Fred [the defendant] came in and asked if he could get them, and we asked who they were for; and he said, 'a friend.' And he said his friend was Ralph Williams, and reluctantly he got the bennies. * * *"

The defendant then left the house and returned to the car. There he delivered the "bennies" to the undercover agent. The latter had previously handed the defendant the money with which to make the purchase.

Defendant relies on *State v. Buchanan,* 8 Or App 150, 493 P2d 184 (1972). In the case at bar the defendant handled the entire transaction for the undercover agent, soliciting the drug, making the payment, and accepting delivery of the drug—all in the absence of the agent. Thereafter he delivered the drug to the police

agent from whom he had received the money. In *Buchanan,* the defendant's sole participation was to introduce the buyer to the seller. He had no other involvement in the transaction, which was not even accomplished in his presence.

We think the motion for judgment of acquittal was correctly denied.

Affirmed.