**Marilyn CASEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1701.**

Supreme Court of Alaska.

April 27, 1973.

William H. Fuld, Kay, Miller, Libbey, Kelly, Christie & Fuld, Anchorage, Alaska, for appellant.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Jr., Dist. Atty., Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

Marilyn Casey was found guilty of unlawful possession of a narcotic drug, numorphan, in violation of AS 17.10.010.[1] This appeal raises issues as to the sufficiency of the evidence, unconstitutional vagueness of the statute and the legality of the sentence prohibiting parole. Since we find that resolution of the first issue is dispositive of this appeal, we do not reach the other questions presented.

Casey presented to a pharmacist a prescription, purportedly signed by F. J. Phil-

---

1. AS 17.10.010 specifies:
   *Acts prohibited.* It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, or compound any narcotic drug except as authorized in this chapter.

lips, M. D., for a drug, numorphan. On checking with the doctor, the druggist was informed that Dr. Phillips had not written the prescription. The pharmacist then notified the police. Casey was indicted for passing a forged instrument in violation of AS 11.25.010 as well as for the offense of possession of a narcotic, but she was acquitted on the forgery charge. This appeal has been taken from her conviction of the charge of possession of a narcotic drug in violation of AS 17.10.010.

■ AS 17.10.010 makes possession of a narcotic drug, except as authorized in the chapter, unlawful. "[N]arcotic drugs" are defined in AS 17.10.230(13) as meaning:

. . . coca leaves, opium, isonipecaine, amidone, isoamidone, ketobemidone, *and every other substance having similar physiological effects*: . . . . (Emphasis added.)

The case was tried on the theory that numorphan is a drug having "similar physiological effects" to the other drugs named in AS 17.10.230(13).[2]

The testimony touching on the physiological effects of numorphan was sketchy and superficial. Doctor Phillips, who had previously prescribed the drug for Casey, stated that he was "somewhat familiar" with numorphan, that it is an analgesic with tranquilizing effects, and that he had ceased to prescribe it because it is "very habit forming". A pharmacist testified that the drug was an opiate or narcotic and that it was a "synthetic derivative. It's not a derivative from the opium poppy." [3]

■ Even if we were to assume that the fragmentary testimony of the doctor constituted an adequate description of the "physiological effects" of numorphan, we are left with a complete absence of testimony as to the physiological effects of the drugs specifically named in AS 17.10.230 (13). There was no testimony as to the effects of opium or the other named drugs, and thus there was no basis for the court to find that numorphan had "*similar* physiological effects" to any of those drugs. There being a complete absence of proof as to this essential element of the offense charged, we have no choice but to reverse the conviction.

Reversed.

2. According to L. Goodman and A. Gilman, the Pharmacological Basis of Therapeutics, 19–25 (4th ed. 1970), each of the drugs named has a wide variety of physical effects varying in nature dependent upon such factors as body weight, age, sex, manner and time of administration, tolerance, genetic factors, etc. More than 23 basically different effects are ascribed to the listed drugs, with all of these effects subject to numerous variances. Some of the effects are similar to those of such commonly used substances as alcohol, tobacco, aspirin and coffee. Thus, if we were to reach the issue of whether the phrase "having similar physiological effects" is unconstitutionally vague, we would have grave doubts as to its constitutionality. In Harris v. State, 457 P.2d 638, 647 (Alaska 1969), we stated:

But where the conduct to be prohibited by a criminal statute is capable of objective definition by language descriptive of precise physical acts and events, it simply will not do to use language so ambiguous as to be capable of expansion or contraction at the whim of the reader.

*See also* Marks v. City of Anchorage, 500 P.2d 644, 646 (Alaska 1972).

3. AS 17.10.230(13) specifically includes "opium" within the definition of "narcotic drugs". Despite the testimony that numorphan was a "synthetic" derivative of opium, no attempt was made to bring the case under the provisions of AS 17.-10.230(11) defining "opium" as including "any compound, manufacture, salt, derivative, mixture, or preparation of opium". By contrast, in Oregon v. Livingston, 2 Or.App. 587, 469 P.2d 632, 634 (1970), a police chemist with a bachelor's degree in chemistry and 21 years' experience in police laboratory work testified that numorphan was derived from thebaine, one of the constituent elements of opium. Thus, in that case it was established that numorphan came within the definition of "opium".