Argued June 20, reversed and remanded September 6, 1978

STATE OF OREGON, *Respondent,*
*v.*
BURT NEAL HALL, *Appellant.*
(No. C77-07-09263, CA 9290)

583 P2d 587

Marianne Oswald, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief were Gary D. Babcock, Public Defender, and Paul A. Wallstrom, Law Clerk, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Kathleen Dahlin, Certified Law Student, Salem.

Before Schwab, C. J., and Johnson,* Gillette and Roberts, Judges.

GILLETTE, J.

---

*Johnson, J., did not participate in this decision.

## GILLETTE, J.

Defendant shot an Oregon State police officer in the knee during an exchange of gunfire with the officer. He was convicted by a jury of attempted manslaughter and assault in the first degree. Defendant appeals and assigns four alleged errors. We reverse and remand for retrial.

On the evening of July 1, 1977, defendant was on his way home from a sporting goods store where he had unsuccessfully tried to sell two handguns. He was given a ride part way in a motorhome driven by some friends who were stopping at a business establishment located a few blocks from defendant's residence. Defendant left his friends at the firm and started to walk home, when he was stopped by Officer Wilson. A short time before Wilson stopped defendant, he had stopped a motorhome, in which defendant had been a passenger, for a possible traffic violation. Wilson then watched the motorhome pull into the parking lot of the firm, a business which he suspected was connected with illegal activities. When he noticed defendant walking away carrying a large stocking cap under his arm, Wilson approached defendant and asked him what he was carrying in the stocking cap. Defendant pulled the cap down, revealing a belt, an ammunition pouch and a shoulder holster. The officer took the cap and its contents, asked defendant for identification and returned to his patrol car to run a record check on defendant. He advised defendant not to move or he would take him to jail. The record check showed there were no warrants outstanding on defendant and Wilson decided to let defendant go. As he walked back to defendant, however, he noticed the outline of an automatic pistol clip in defendant's right hand jacket pocket. Wilson patted that pocket, unzipped it and pulled out a pair of gloves and a loaded automatic pistol clip. Wilson noticed a bulge on defendant's left side and began to frisk that area. When defendant quickly reached across his body and inside his jacket to his right side, Wilson thought defendant was reaching

for a gun, so he pulled his own gun. Defendant pulled his gun about the same time Wilson did and the two men fired. Wilson was shot as he and defendant backed away from each other.

Defendant first assigns as error the admission of evidence with respect to the nature of the area in which the altercation with the officer took place. The evidence in general consisted of testimony that the defendant was seen arriving at and then walking away from a business establishment known to the police as an unsavory place. Wilson and another Oregon State Police officer, Officer Kemper, testified at trial that the firm was closely watched by the Oregon State Police because it was known to employ ex-convicts and was suspected as being a cover for various criminal activities involving narcotics and illegal weapons.

Defendant argues that evidence concerning the reputation of the company was irrelevant. The state argues that the evidence was relevant in light of defendant's testimony that the officer was acting in a hostile and threatening manner and in light of defense counsel's remarks made during his opening statement to the effect that defendant was being harassed by Officer Wilson because he was black and that defendant was stopped for no reason by Officer Wilson, who was patrolling an area away from his assigned route.

Evidence is relevant if it tends to prove an issue in the case, *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975) and is admissible when its probative value outweighs any prejudicial effect. *State v. Harrison,* 253 Or 489, 455 P2d 613 (1969); *State v. Keffer,* 2 Or App 559, 470 P2d 381 (1970). Absent an abuse of discretion, the process of weighing the probative value of evidence against its tendency to produce prejudice is a matter for the trial judge. *State v. Oland,* 1 Or App 272, 461 P2d 277 (1969). Here, the trial judge found that the evidence concerning the business was relevant in part to prove "whether [Officer Wilson] had

any reasonable business to be there, whether he was just harassing citizens * * *"

We will not disturb the trial judge's ruling. Once defendant opened the door on the issue of harassment, the validity of the stop, and the propriety of Officer Wilson being in that particular neighborhood, the state was entitled to bring in evidence which would indicate that Officer Wilson was acting within his authority in stopping defendant. Accordingly, any prejudicial effect that the testimony concerning the business might have had on defendant was outweighed by its probative value.

Defendant's second assignment of error is also directed at the admission of allegedly irrelevant evidence, specifically, a weapon not involved in the altercation between defendant and Officer Wilson, but found in the defendant's possession at the time of his arrest.

At the time of the shooting, defendant was armed with two handguns. After he shot Officer Wilson, defendant fled the scene and went to his home where he obtained an M-1 rifle. Concealing the rifle and the two handguns beneath his jacket, defendant then hid behind some bushes in the backyard of a nearby house. He was arrested there soon after. The two handguns and the rifle were introduced in evidence at defendant's trial. Defendant contends that the rifle was not relevant to any issue in the case and was improperly admitted as evidence.

We agree with defendant that admission of the rifle was error. The rifle was not the weapon used in the crime charged. We can see no reason to include at trial information about the third weapon other than to blacken the name of defendant. This is especially true where, as here, the rifle had been altered to make it easily concealable and the prosecutor, on closing argument, made a point of this to the jury. This introduced the improper inference that defendant is the criminal type who carries concealed weapons and might engage

[ 137 ]

in various other criminal activities. The probative value of the evidence, if there is any, was outweighed by its prejudicial effect. *State v. Manrique, supra.*

Defendant also assigns as error the giving of instructions on self-defense and the right to resist arrest which defendant claims are contradictory and misleading. The instructions were based on the two applicable statutes, ORS 161.209 and 161.260.

ORS 161.209 provides:

"Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person to defend himself * * * from what he reasonably believes to be the use or imminent use of unlawful physical force, and he may use a degree of force which he reasonably believes to be necessary for the purpose."

ORS 161.260 provides:

"A person may not use physical force to resist an arrest by a peace officer who is known or reasonably appears to be a peace officer, whether the arrest is lawful or unlawful."

Defendant argues that the statutes "appear inconsistent." Because this is an issue that may arise again at retrial, we examine the adequacy of the instructions, which were as follows:

"[THE COURT:] A person is justified in using physical force upon another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force, and he may use that degree of force which he reasonably believes to be necessary for the purpose.

"Now, one has the right to use self defense against unlawful physical force by a Peace Officer, just as he would against an unlawful physical force upon another person where the physical force was used to defend himself, as I have said, from what reasonable—from what the defendant reasonably believed to be the use or imminent use of unlawful physical force upon himself. However, the defendant may only have used that degree of force which he reasonably believed to be necessary.

"* * * * *

"[THE COURT:] * * * *A person may not use physical force to resist an arrest by a Peace Officer, whether the arrest is lawful or unlawful. * * * (Emphasis supplied.)

"* * * * *

"* * * And as I have already said, a person has the right to self defense against unlawful physical force by a Police Officer in the same way he would against any private citizen."

We agree with defendant that the instructions were misleading, but only in that they were more favorable to defendant than he was entitled to. The correct rule is not, as both the state and defendant have urged in their briefs, that a person may use force to resist an unlawful arrest where excessive force is used in making the arrest. As we indicated in *State v. Miller,* 35 Or App 207, 215, 216, — P2d — (1978), a person is not justified in forcibly resisting an arrest unless and until he is faced with the illegal use by an officer of deadly force. *See also State v. Meyers,* 57 Or 50, 110 P 407 (1910); *State v. Laurel,* 4 Or App 122, 127-129, 476 P2d 817 (1970) (concurring opinion). Thus, the trial court's instruction that "a person has the right to self-defense against unlawful physical force by a police officer in the same way he would against any private citizen" is not a correct statement of the law and should not be given on retrial.

The matter raised by defendant's other assignment of error is not likely to recur on retrial, and so we do not reach it.

Reversed and remanded for a new trial.