Argued and submitted October 20, 1980, affirmed March 9, 1981

## STATE OF OREGON,
### *Respondent,*
*v.*
## JIMMY LEE CHRISTNER,
### *Appellant.*

## (No. 800350, CA 17747)
624 P2d 1085

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Schwab, Chief Judge, and Richardson and Buttler, Judges.

RICHARDSON, J.

Thornton, J., *vice* Schwab, C.J., retired.

### RICHARDSON, J.

Defendant appeals his conviction after jury trial for robbery in the second degree. ORS 164.405.[1] He assigns as error the trial court's admission into evidence of a knife found in defendant's vehicle at the time of his arrest. Defendant contends that the knife was not probative of any issue or, even assuming that it was, that its probative value was far outweighed by its prejudicial effect. We affirm.

Michael Wood, the victim of the robbery, testified that while leaving a tavern in Lebanon, Oregon, he met a woman identified as Gina McPherson in the parking lot. Wood stated that the two spoke for a short time and that he asked Ms. McPherson if she would like to accompany him for a drink. Ms. McPherson declined, but invited Wood to ride with her to the coast. Wood accepted the invitation and returned to the tavern to purchase a half case of beer for the trip.

While Wood was inside the tavern, Ms. McPherson entered, accompanied by defendant and Michael Blodgett. Ms. McPherson introduced the two men to Wood as her relatives and asked whether Wood objected to their joining them. Wood consented, and the four left the tavern. Once outside, a discussion ensued over what vehicle they would take. Wood suggested that they take his car. Ms. McPherson, however, stated that she wished to take her vehicle instead. The four thereafter left the tavern in Ms. McPherson's vehicle. Defendant drove; Michael Blodgett rode in the front passenger seat, while Wood and Ms. McPherson rode in the back.

Wood testified that within a short time after their departure, he attempted to make sexual advances toward

---

[1] ORS 164.405 provides:

"(1) A person commits the crime of robbery in the second degree if he violates ORS 164.395 and he:

"(a) Represents by word or conduct that he is armed with what purports to be a dangerous or deadly weapon; or

"(b) Is aided by another person actually present.

"(2) Robbery in the second degree is a Class B felony."

Ms. McPherson. Defendant apparently viewed Wood's actions in the rear view mirror and became very upset. Wood testified that defendant then stated something to the effect that he was "going to do it right now" and pulled the vehicle off the road into a parking lot. Defendant ordered Wood to place his hands on the ceiling and stated that if he did not cooperate, he would shoot him with a .357 magnum. Wood never saw a weapon of any type. Wood placed his hands on the ceiling and, while Ms. McPherson held him, defendant struck him across the face several times with his fists. Wood stated that while defendant removed money from his pocket, Blodgett held his hand in his coat pocket simulating what Wood believed to be a handgun. Eventually, defendant ordered Wood out of the vehicle, took his wallet and car keys and removed his boots. Wood stated that defendant threw his boots toward a field, got back in the vehicle and left. Wood eventually obtained help and contacted the Lebanon police.

Within a short period of time, defendant's vehicle was stopped. A search of the car revealed an open folding-type knife sticking into the left side of the driver's seat, the victim's wallet and a quantity of money in denominations described by Wood to have been in his pocket prior to the robbery. Later, Wood's boots and identification papers kept in his wallet were recovered at or near the site of the robbery.

At trial, defendant testified that he had become angry when Wood made advances toward Ms. McPherson. Defendant admitted threatening Wood and striking him. He denied taking money from Wood's pockets or threatening to kill him with a .357 magnum. The other defense witnesses testified that no one threatened to kill Wood, physically restrained him or took his wallet.[2]

---

[2] Defendant, Blodgett and McPherson were all indicted for the robbery in a single indictment. Defendant was tried separately. The indictment alleged:

"The said defendants did * * * unlawfully and knowingly use and threaten the immediate use of physical force upon Michael Wood, by holding, striking and threatening to kill Michael Wood, being aided by each other actually present and did represent by word that said defendants were armed with a deadly weapon, to-wit: a .357 magnum, while in the course of committing theft of property, to-wit: money, with the intent of preventing resistance to the said defendants' taking of the said property * * *."

Defendant's sole assignment of error is that the court erred in admitting into evidence the knife found in the vehicle when defendant was arrested. Defendant contends that the knife was neither logically nor legally relevant to any issue. The state submits that the knife was probative in that it tended to corroborate Wood's story, showed defendant's true intent and showed the seriousness of defendant's statement that he was armed with a dangerous and deadly weapon. The state's position is that evidence that defendant was armed at the time he threatened Wood shows he was capable of seriously injuring Wood at the time.

Before evidence is admissible, it must be: (1) logically relevant, i.e., must make more or less likely a contention in dispute; and (2) its probative value must outweigh any improper inferences that could be drawn from the evidence. McCormick on Evidence, § 185 at 441 (2d ed 1972). As stated in *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975):

> "The fundamental rule of evidence is that in order to be admissible evidence must be relevant, i.e., have some probative value to prove some issue in a case, and that all relevant evidence is admissible unless it falls within one of the so-called 'exclusionary' rules of evidence. See *Trook v. Sagert,* 171 Or 680, 688, 138 P2d 900 (1943), and *State v. Kristich,* 226 Or 240, 244, 359 P2d 1106 (1961). It is equally well established that evidence may be rejected, although relevant, if its probative value is outweighed by various other considerations, including the danger of prejudice. McCormick on Evidence 438-39, § 185 (2d ed 1972). See also *State v. Zimmerlee,* 261 Or 49, 54, 492 P2d 795 (1972), and *State v. Harrison,* 253 Or 489, 491, 455 P2d 613 (1969)." 271 Or at 205.

Defendant argues that no witness testified that defendant, or anyone present, had a knife. Wood did state that he never saw a knife or a gun. He did, however, state that he believed Blodgett appeared to have a weapon. As noted, defendant submits the knife was not relevant and any relevance was outweighed by substantial prejudice. In support of these contentions, he relies on our decision in *State v. Hall,* 36 Or App 133, 583 P2d 587 (1978).

In *Hall,* defendant, armed with two handguns, shot and wounded a police officer. Defendant fled the scene, returned home and obtained a third weapon, a rifle which had been altered to make it easily concealable. Defendant took all three weapons and hid. When arrested, the weapons were recovered in his possession. At trial, in addition to the handguns, the state introduced the rifle. In reversing defendant's conviction, we noted:

> "We agree with defendant that admission of the rifle was error. The rifle was not the weapon used in the crime charged. We can see no reason to include at trial information about the third weapon other than to blacken the name of defendant. This is especially true where, as here, the rifle had been altered to make it easily concealable and the prosecutor, on closing argument, made a point of this to the jury. This introduced the improper inference that defendant is the criminal type who carries concealed weapons and might engage in various other criminal activities. The probative value of the evidence, if there is any, was outweighed by its prejudicial effect. *State v. Manrique, supra.*" 36 Or App at 137-38.

*Hall* is distinguishable from the present case. In that case there was no dispute that the defendant was armed with two handguns at the time the officer was shot. The rifle was clearly acquired after commission of the crime. There was no question, therefore, that the rifle was neither used in the crime nor in the defendant's possession at the time the crime was committed. The gun was inadmissible because it bore no logical relevance to any issue in the case. There was nothing to link the rifle with the crime charged. *See State v. Harrison,* 253 Or 489, 455 P2d 613 (1969); *State v. Thompson,* 228 Or 496, 364 P2d 783 (1961). Further, the weapon's altered nature, which was argued to the jury, clearly injected into the case an improper inference that defendant would be likely to engage in *other* criminal activities. This inference created prejudice far beyond what probative value, if any, existed.

In the present case there is no allegation that any of the three co-defendants was actually armed with a weapon. The allegation is that defendant *threatened* and *represented* that he was armed with a dangerous or deadly weapon. Whether or not defendant had a particular weapon was not in issue. Second, unlike in *Hall,* the evidence would

support an inference that the knife was in defendant's possession at the time the crime was committed, was open, ready for use and accessible to defendant. The state argues that the knife was relevant to show defendant's intent to commit the charged crime and to corroborate the victim's testimony.

Defendant and his cohorts would have us believe that the victim was invited on the trip by the young woman with the expectation of having a friendly get together. If the victim is believed, the woman was bait to induce him to get in the car for the purpose of robbing him. The existence of a readily accessible weapon tended to corroborate the victim's story and the state's theory of the case. The knife allows the inference that defendant was prepared and willing to threaten Wood with serious bodily injury, a material element of the crime. *State v. Manning,* 39 Or App 279, 591 P2d 1195 (1979). The necessary link between the knife and the crime existed and, therefore, the evidence was logically relevant. Further, again unlike in *Hall,* the probative value outweighed any prejudice. The state argued only that the knife was relevant to the crime charged, not that by having such a weapon defendant would commit other crimes.

The victim testified that defendant threatened to kill him if he did not cooperate. Though Wood stated that defendant represented he had a high powered gun, no gun was seen or found when defendant was arrested. The important consideration is that Wood testified that defendant threatened him in such a manner and defendant denied making such a threat. The existence of the knife was relevant not only to the manner in which the crime was committed, but also to the issue of defendant's intent and to whether defendant was prepared and willing to threaten Wood with serious injury. The trial court did not err in admitting it into evidence.

Affirmed.