Hillsborough
No. 80-218

THE STATE OF NEW HAMPSHIRE

v.

LLOYD G. BASINOW

September 28, 1981

816

*Paul W. Bruzga,* of Manchester, by brief and orally, for the defendant.

*Gregory H. Smith,* attorney general (*Peter W. Mosseau,* assistant attorney general, on the brief and orally), for the State.

PER CURIAM. In September 1979, the Hillsborough County Grand Jury returned four indictments against the defendant. The indictments alleged that on June 7, 1979, and on June 9, 1979, the defendant either attempted to obtain or obtained a controlled drug, percodan, by fraud in violation of RSA 318-B:20 (Supp. 1979). Prior to trial, one of the indictments was *nolle prossed.*

On February 1, 1980, a hearing on the defendant's motions to quash the remaining three indictments was held before *Wyman,* J., who denied the motions and noted the defendant's exceptions. A jury-waived trial commenced on March 5, 1980, before *Flynn,* J., who found the defendant guilty on all three indictments. From the denial of a motion to set aside the verdict, and on exceptions taken during the trial, the defendant appeals to this court. We affirm.

On May 22, 1979, Dr. Loretta Guzzi treated the defendant for a back ailment. Two days later, she examined him again and prescribed percodan for the pain. After receiving this written prescription, the defendant took it to a pharmacy to be filled. The defendant presented the prescription to the pharmacist, who gave him the drug. The pharmacist kept the prescription.

Four days after he received his first prescription for percodan, the defendant returned to Dr. Guzzi and obtained another prescription for twenty pills of percodan. At the time this prescription was issued, the section entitled "Refill" was left blank. Instead of bringing the prescription to a pharmacist to be filled, as he had

before, the defendant took it to a commercial printing company which made ten photocopies of it.

On June 7, 1980, the defendant brought a photocopy of the original prescription to the Metz Pharmacy. The pharmacist on duty, Mr. Gosselin, recognizing the defendant as a regular customer who had received narcotic analgesics before, did not question the authenticity of the prescription and dispensed the drug to the defendant. The druggist testified that, because percodan is a schedule II drug under the Federal Regulations, 21 C.F.R. § 1308:12 (1981), a prescription for the drug is automatically nonrefillable. Consequently, he placed a "No Refill" sticker on the finished product he gave to the defendant. The druggist also testified that if the defendant had mentioned that the prescription was a copy, he would not have filled it.

The defendant visited three other pharmacies on June 9, 1980. Pharmacists at two of the stores determined that the prescription presented to them by the defendant was not an original, and they refused to give the defendant any percodan although they did not inform him of their reason for doing so. At the third drug store, the defendant was successful in obtaining percodan by presenting the photocopy. The pharmacist at that store testified that she looked at the prescription and that it "looked like it might be a copy but I wasn't sure, so I checked our records and he did have a record card with us, which means that he was a regular customer of ours. He also had a charge account, a store charge account, with us; so I gave him the benefit of the doubt and decided that perhaps it wasn't a copy, and I filled the prescription."

■ RSA 318-B:20 I(a) (Supp. 1979) prohibits any person from obtaining or attempting to obtain controlled drugs by "fraud, deceit, misrepresentation or subterfuge." Although this court has not interpreted this phrase, other jurisdictions with similar statutes have determined that this prohibition applies when trickery, nondisclosure or untruthfulness is utilized to obtain a prescribed substance. In *State v. Livingston*, 469 P.2d 632, 634 (Or. Ct. App. 1970), the charge was that of attempting to obtain narcotic drugs by "fraud, deceit, misrepresentation and subterfuge," and the court concluded that the statute should be given a sensible construction according to the fair import of its terms with a view to effect the object of regulating and controlling traffic in narcotic drugs. *Id.* The court reasoned that although the four words do have precise technical meanings in some legal contexts, their less precise everyday meaning is best suited for effectuation of the statutory purpose. *Id.* This reasoning, together with the fact that the statute

uses a number of roughly synonymous terms, leads us to conclude that the clear object of the statute is to proscribe the obtaining of controlled drugs through untruthfulness or nondisclosure, regardless whether the means employed constitutes "fraud," "deceit," "misrepresentation" or "subterfuge" in the technical sense. *See State v. St. John*, 544 S.W.2d 5, 8 (Mo. 1976).

■ The defendant's intent to obtain unauthorized amounts of percodan through trickery and nondisclosure was aptly demonstrated by the evidence. RSA 318-B:9 I (Supp. 1979) specifies that the pharmacist filling a prescription shall retain the prescription for his records. During the trial, the defendant acknowledged that if he had presented the original prescription to a pharmacist, it would not have been returned to him because "[t]he policy of every pharmacy is to retain the prescription that is presented to them." The defendant also acknowledged that he photocopied the prescription in order to obtain additional pills without returning to see Dr. Guzzi. From this testimony, it is clear that the defendant photocopied the prescription because he intended to obtain more pills than the twenty Dr. Guzzi had prescribed.

■ The defendant makes much of the fact that the prescription he obtained from Dr. Guzzi contained no limitation on the number of refills he could obtain and argues that he had no reason to believe that the prescription was not refillable. The trial court was free to reject this assertion. The prescription itself is for twenty pills and makes no mention of its being refillable. Furthermore, the defendant's actions in taking the photocopied prescription to stores other than that in which he obtained the first filling are inconsistent with his claim that he believed he could refill the prescription. Finally, the defendant's testimony indicated that he photocopied the original prescription because he wanted to obtain additional pills without returning to the doctor, thus indicating that he knew the prescription was not refillable.

■■ The defendant also argues that his convictions should be overturned because he photocopied his prescription and presented it to various pharmacists in the mistaken belief that it was legal to obtain the drugs by presenting a photocopy rather than the original. We believe that RSA ch. 318-B (Supp. 1979) contemplates the distribution of drugs only pursuant to an original prescription. Regardless whether a person may legally obtain a controlled drug by presenting a photocopy of a valid prescription, however, the defendant's conviction for obtaining and attempting to obtain a controlled drug by "fraud, deceit, misrepresentation or subterfuge"

must stand. In this respect, the important point is that the defendant photocopied the prescription in order to obtain more of the drug than he was entitled to obtain under the prescription.

■ The defendant next argues that his conviction must be overturned because he lacked the requisite intent to perpetrate a fraud. We disagree. Although the defendant may not have known that percodan was a "controlled drug," he knew that he could not obtain it without a prescription and that he could not have it refilled without returning to Dr. Guzzi or some other physician. His scheme was designed solely to circumvent this procedure and clearly demonstrates his fraudulent intent. The defendant's suggestion that he is not guilty of fraudulently obtaining the drugs because the pharmacists consented to the transactions merits no discussion.

■ The defendant argues that the prosecution must establish a material misrepresentation which is a cause in fact of the acquisition in order to obtain a valid conviction. *See United States v. Bass*, 490 F.2d 846, 857 (5th Cir. 1974). As we have already noted, however, the State need not prove all the technical elements of fraud, deceit or misrepresentation in order to establish the guilt of the defendant. Under RSA 318-B:20 (Supp. 1979), it is sufficient if the State establishes that the defendant obtained or attempted to obtain controlled drugs through trickery, nondisclosure or other subterfuge. *See State v. St. John*, 544 S.W.2d 5, 8 (Mo. 1976). The evidence supports the conviction.

■ The defendant argues that his conviction for obtaining the first twenty percodan pills cannot stand because he was entitled to them pursuant to his valid prescription and because there is no law requiring a person to present to the pharmacist the original prescription rather than a photocopy. We disagree. It is true that the defendant had a valid prescription for the percodan, but the law is clear that a pharmacist may dispense controlled drugs only pursuant to an oral or written prescription of a physician. Although the defendant had a valid written prescription of a physician, he did not present it to the pharmacist. Instead, he presented a piece of paper that was a photocopy of a valid prescription. Thus, the defendant obtained the first twenty percodan pills by committing a subterfuge, not pursuant to a written prescription of a physician. That the defendant might have obtained the same drugs with the valid prescription is no defense to a charge of obtaining them unlawfully.

 The defendant finally argues that his conviction cannot stand because the documents he presented to the four pharmacists were obvious photocopies. He stresses that the trial court found that the documents were "patent photocopies" and that the pharmacists "knew or should have known" that they were photocopies. These findings do not, however, excuse the defendant's conduct. It is no defense to a charge of obtaining controlled drugs through fraud that the scheme employed would not have fooled a reasonable man.

*Affirmed.*

BATCHELDER, J., did not sit.