Argued April 23, affirmed May 28, petition for rehearing denied
June 29, petition for review denied September 21, 1971

# JAMES A. PATTON, *Appellant, v.*
# CUPP, *Respondent.*
### 485 P2d 644

[ 1 ]

*J. Marvin Kuhn*, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Jim G. Russell*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

Petitioner appeals from a judgment dismissing his petition for post-conviction relief. The petition asserted two causes for relief, both arising out of petitioner's 1956 trial for armed robbery which resulted in a conviction and life sentence: (1) that the trial court's failure to submit to the jury alternative verdicts on lesser included offenses, over petitioner's exception, was a denial of due process and of the right

to jury trial on those lesser offenses; and (2) that the in-court identifications of petitioner by three witnesses were tainted by unfair pre-trial identification procedures, thereby denying petitioner due process of law. The state demurred to the petition, contending that it failed to state facts sufficient to justify exercise of jurisdiction or to authorize the relief demanded. The court, without stating on which ground, entered an order sustaining the demurrer as to petitioner's first cause of action but overruling it as to the second. After a hearing on the second cause of action, the circuit court entered the judgment now appealed from.

ORS 138.550 provides in part:

"(2) When the petitioner sought and obtained direct appellate review of his conviction and sentence, no ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 [the Post-Conviction Hearing Act] unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding. * * *

"(3) All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in his original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition. * * *"

The state contends that petitioner, whose conviction and sentence were reviewed and affirmed on appeal to the Oregon Supreme Court in *State v. Patton*, 208 Or 610, 303 P2d 513 (1956), and whose original petition for post-conviction relief filed in 1961 was dismissed, has failed to show that the assertion of his first cause of action is not precluded by these pro-

visions. The petition states that this ground for relief, raised for the first time, "could not reasonably have been asserted" in petitioner's direct appeal or in his original post-conviction proceeding because *Braley v. Gladden*, 403 F2d 858 (9th Cir 1968), was not decided until November 21, 1968.

■ The unusual facts in *Braley* do not match those present here. In reversing an Oregon conviction for first degree murder because of the trial court's failure to submit to the jury a not guilty verdict form the Court of Appeals said this:

> "* * * [I]t is equally reasonable to assume that the jury inferred that the judge intended that only one verdict was possible, a verdict of guilty upon the one and only form which he supplied.
>
> "All recognize that a trial judge's influence upon the jury is profound. * * * Hence, the oversight in not furnishing the not guilty verdict form along with the opposite form constituted, in effect, a severely adverse comment by the trial judge, an impermissibly grave insinuation of judicial attitude toward the ultimate issue of guilt or innocence. Accordingly, we hold that the influence exerted by the trial judge * * * was so significantly irregular as to require a new trial." 403 F2d at 860.

Whether or not it was error, the trial court's failure in petitioner Patton's case to submit alternative verdicts on lesser included offenses could in no way have been interpreted as a comment on petitioner's guilt or innocence of the charge of armed robbery. Petitioner's reliance upon *Braley v. Gladden*, supra, is not a showing that his first cause of action is based upon a new constitutional principle not recognized at the time of his direct appeal or of his original petition. *Cain v. Gladden*, 247 Or 462, 430 P2d 1015 (1967); ORS 138.530 (1)(a). Whatever the circuit court's rea-

son for sustaining the state's demurrer, it could properly have done so for the foregoing one.

■ Petitioner also assigns as error the post-conviction court's finding that in-court identifications of petitioner made by three named witnesses were neither the products of nor tainted by any suggestive pre-trial identification procedures. The basis for petitioner's due process challenge is the second of two rules of law enunciated by the United States Supreme Court in *Stovall v. Denno*, 388 US 293, 87 S Ct 1967, 18 L Ed 2d 1199 (1967).① The court succinctly restated the rule in *Foster v. California*, 394 US 440, 89 S Ct 1127, 22 L Ed 2d 402 (1969):

"* * * [W]e recognized [in *Stovall*] that, judged by the 'totality of the circumstances,' the conduct of identification procedures may be 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to be a denial of due process of law. * * *" 394 US at 442. See also, *Simmons v. United States*, 390 US 377, 88 S Ct 967, 19 L Ed 2d 1247 (1968).

We must then judge the totality of the circumstances as they appear on the record.

The findings of fact made by the Marion County Circuit Court following the post-conviction hearing are informative on this issue. The court found that:

"1. At the trial, James Higgins identified petitioner as the man who ran by him from the direction of the store at the time of the robbery. Higgins was at the jail the night before trial to make a pre-trial identification. His attention was

---

① The first was that the right-to-counsel-at-lineups requirement established in United States v. Wade, 388 US 218, 87 S Ct 1926, 18 L Ed 2d 1149 (1967), and Gilbert v. California, 388 US 263, 87 S Ct 1951, 18 L Ed 2d 1178 (1967), would receive prospective application only as of June 12, 1967.

drawn to a man other than petitioner, and no out-of-court identification of petitioner was made by Higgins.

"2. Aileen Pursley identified petitioner at trial as the man who committed the robbery. Prior to trial Mrs. Pursley, while seated on a bench in a hallway of the courthouse, watched petitioner walk without pausing from the elevator door to the county medical laboratory. Petitioner was not handcuffed and was accompanied by an elderly jailer.

"3. Approximately one week after the robbery, Mrs. Pursley selected petitioner's photograph from approximately ten similar photographs, as the man who robbed the store.

"4. At trial Mrs. Pursley testified that she got a good look at petitioner, gave an accurate description of his clothing worn at the time of the robbery, and stated that her in-court identification was not influenced by the statements of others.

"5. At trial, Edward Moran identified petitioner as the party who committed the act of armed robbery, and stated that, at the time of the robbery, he deliberately studied petitioner's features for purposes of later identification.

"6. Two days after the robbery Mr. Moran was taken to Portland where he spent hours examining police 'mug books'. He identified petitioner from a photograph, indicating that petitioner was older than the pictured showed. The photograph was later ascertained to be ten years old. Mr. Moran made a subsequent photographic identification of petitioner. A different photograph was utilized.

"7. On the day of petitioner's preliminary hearing, Mr. Moran made an identification of petitioner when, standing in the hallway, he saw petitioner's face framed in a small diamond-shaped window in the door of the elevator. Petitioner's attire, his handcuffed hands, or the accompanying police of-

ficers could not be observed, as the elevator doors were still closed when the exclamation of identification was made."

In regard to the pre-trial visit to the jail by witness Higgins, we point out that petitioner was seated in a room, with several other inmates, subject to the view of Mr. Higgins. Also, Mrs. Pursley testified at the post-conviction hearing that she was seated on the bench in the courthouse on the day she saw petitioner walk through the hallway because

"* * * two officers I think told us to go up there and sit on that bench and wait, that the jailer was going to bring Mr. Patton down to the Health office * * *."

■ Although petitioner tells a somewhat different story than the one believed by the court,

"* * * [w]e are not authorized to retry disputed questions of fact in post-conviction cases where there is evidence to support the trial court's findings. * * *" *Endsley v. Cupp*, 1 Or App 169, 173-74, 459 P2d 448 (1969), Sup Ct *review denied* (1970).

It was the petitioner's burden to prove by a preponderance of the evidence those facts alleged in his petition. *Fletcher v. Cupp*, 1 Or App 467, 463 P2d 365 (1969), Sup Ct *review denied* (1970); ORS 138.620 (2). A full review of the record indicates that the court's findings of fact are readily supportable. Though not ideal, the pre-trial identification procedures used in this case did not, when judged by the "totality of the circumstances," constitute a denial of due process of law.

Affirmed.