Argued June 21, affirmed August 6, petition for rehearing denied
August 30, petition for review denied October 23, 1973

# STATE OF OREGON, *Respondent, v.* CLAUDE EDWARD DAVIS (No. C 72-10-3424 Cr), *Appellant.*

512 P2d 1366

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Defendant was convicted after a jury trial of criminal activity in drugs. ORS 167.207. He appeals, asserting that the trial court erred both in denying a pretrial motion to suppress certain identification

testimony, and in refusing to give a requested jury instruction on the defense of entrapment.

We affirm the trial court.

The relevant facts are as follows: Late on the afternoon of October 6, 1972, Special Agent Horn, of the Federal Bureau of Narcotics and Dangerous Drugs, received a call from an informer. Agent Horn was then operating as an undercover agent investigating narcotics traffic in Portland. The informer told Agent Horn that a heroin sale had been arranged, and gave the agent the address of an apartment in North Portland.

Agent Horn went to the apartment and waited some few minutes before the informer, the defendant, and another individual, identified in the record only as "Dick," all arrived together. The informer introduced the agent to the defendant, and then the informer and "Dick" went into another room.

Agent Horn told the defendant of his interest in buying some heroin. The defendant asked how much the agent wanted, and Agent Horn, not knowing what quantity of heroin the defendant had, requested only two bags.

The defendant then pulled a large balloon from his pocket, handed the agent two bags of heroin, and received $20 in return. Agent Horn testified that the large balloon contained "several" smaller balloons. Agent Horn also said that he would have asked the defendant for more heroin had he known in advance that the defendant had more than two bags.

A few minutes later all the parties left the apartment. The defendant and Agent Horn did not leave together.

At the time. of the heroin sale, Agent Horn did not know the defendant's name. The informer, after the sale, told the agent that the defendant's name was Claude E., or Claudie. The informer did not know the last name.

Shortly after the sale, Agent Horn went to the Portland Police Department. The agent asked a policeman if he knew of an individual involved in narcotics named Claude E., or Claudie. The policeman said that he did, and supplied the last name of Davis.

A few days later, Agent Horn went to the identification section of the Portland Police Department and asked for a photograph of Claude Davis, the defendant. He received a standard police mug shot photograph which he kept and placed in his file. The agent testified that he looked at this photograph at least three times before trial, including once just before the trial.

The defendant contends that the agent's pretrial identification of the defendant from a single mug shot was so suggestive as to irreparably taint the agent's in-court identification, and require its suppression.

In discussing this contention, we note at the outset that at trial the state did not rely on the agent's pretrial identification of the defendant from the single photograph. In fact, the district attorney took care to see that the mug shot, introduced by the defendant during the suppression hearing, did not go to the jury. The state also did not mention the photograph at trial, although the defense questioned Agent Horn about it on cross-examination.

> "* * * The danger that use of the technique [of photographic identification] may result in convictions based on misidentification may be substantially lessened by a course of cross-examination

at trial which exposes to the jury the method's potential for error. * * *[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification * * *." *Simmons v. United States,* 390 US 377, 384, 88 S Ct 967, 19 L Ed 2d 1247 (1968). *See also, Stovall v. Denno,* 388 US 293, 87 S Ct 1967, 18 L Ed 2d 1199 (1967); Annotation, 39 ALR3d 1000 (1971).

■ We hold that, in the totality of the circumstances of this case, the agent's conduct in looking at a single mug shot of the defendant was not so unnecessarily suggestive as to constitute a denial of due process of law. *State v. Cox,* 12 Or App 215, 505 P2d 360, Sup Ct *review denied* (1973); *Patton v. Cupp,* 6 Or App 1, 485 P2d 644, Sup Ct *review denied* (1971); *State v. Smith,* 1 Or App 153, 458 P2d 687, Sup Ct *review denied* (1970).

Agent Horn testified that he was with the defendant at the apartment for almost 10 minutes. During this time the defendant and the agent were standing fairly close to each other, at least close enough to exchange the heroin and money.

Of the four persons present in the apartment during the sale, two, Agent Horn and "Dick," are white, and two, the defendant and the informer, who was previously known to the agent, are black.

Both at the identification suppression hearing and at trial, Agent Horn positively identified the defendant as the individual who sold the agent heroin on October 6, 1972. The agent expressed no doubt as

to this identification despite probing cross-examination by defense counsel.

■ The agent also testified that he identified the defendant solely from the sale transaction, and not from the mug shot photograph. Even if Agent Horn's conduct in looking at a single photograph of the defendant were so suggestive as to be violative of due process, a holding we expressly reject, still his identification testimony would be admissible if shown to be based on an independent nontainted source. *State v. Dixon*, 5 Or App 113, 481 P2d 629, Sup Ct *review denied* (1971), *cert denied* 404 US 1024 (1972); *State v. Mershon*, 1 Or App 305, 459 P2d 551 (1969), Sup Ct *review denied* (1970); *Clemons v. United States*, 133 App DC 27, 408 F2d 1230, *cert denied* 394 US 964 (1968).

Agent Horn insisted that he did not rely on the photograph to identify the defendant. The agent emphasized that he sought the defendant's full name, and later the mug shot, only for purposes of investigative information, and not for identification. We note that the back of the mug shot lists considerable information, such as the defendant's date and place of birth. This is precisely the type of information which Agent Horn said he sought from the photograph.

Although a police officer, like any other person, may be subject to the effects of suggestive identification procedures, still, we recognize that investigative techniques also impose certain necessities on an officer which would not usually apply to a citizen witness. Here, Agent Horn in his investigation wanted to get the defendant's full name. He also needed further personal information for his final official report.

■ Thus, while showing a single police mug shot to

a witness might, under certain circumstances, be impermissibly suggestive, we hold that here the agent's conduct did not amount to a denial of due process and that, in any event, the agent's identification was not based on the photograph. The trial court correctly refused to suppress the agent's identification testimony.

In his second assignment defendant argues that the trial court erred in refusing to give a requested instruction on entrapment.

■ Before trial, defense counsel submitted written notice of his intention to rely on the defense of entrapment. Defendant contends that, merely by submitting such notice, he raised the defense of entrapment which the state was then required to disprove.[①]

■ We have already decided this question adversely to defendant's contention.

"The trial court ruled that unless some evidence in support of the defense were offered, no instruction should be given, and refused the demand. On

---

[①] ORS 161.055 provides:

"(1) When a 'defense,' other than an 'affirmative defense' as defined in subsection (2) of this section, is raised at a trial, the state has the burden of disproving the defense beyond a reasonable doubt.

"(2) When a defense, declared to be an 'affirmative defense' by chapter 743, Oregon Laws 1971, is raised at a trial, the defendant has the burden of proving the defense by a preponderance of the evidence.

"(3) The state is not required to negate a defense as defined in subsection (1) of this section unless it is raised by the defendant. 'Raised by the defendant' means either notice in writing to the state before commencement of trial or affirmative evidence by a defense witness in the defendant's case in chief."

Entrapment is a "defense," as opposed to an "affirmative defense." ORS 161.190. Entrapment is defined in ORS 161.275.

appeal, the state public defender *correctly* concedes the trial court's ruling was proper * * *." *State v. Williams*, 12 Or App 21, 23, 503 P2d 1254 (1972), Sup Ct *review denied* (1973). (Emphasis supplied.)

■ The defendant also argues that the evidence at trial did raise the defense of entrapment. In refusing to give the requested instruction on entrapment the trial court ruled that the evidence did not raise the defense and would not support an instruction. We agree.

Some of Agent Horn's testimony concerned his tactics as an undercover agent investigating narcotics traffic. Agent Horn mentioned that, as an undercover agent, he had to persuade narcotics sellers that he was a heroin user, and hide the fact that he was a policeman. This testimony was in the abstract, and not related to the facts of this case. Certainly, the testimony did not indicate entrapment.

During cross-examination, Agent Horn did state that part of his job was to overcome resistance to selling heroin to him, and that this was to some degree his job on this case. However, again, a reading of the entire transcript demonstrates that Agent Horn was speaking only of a resistance to selling heroin to him, a white man operating in a predominantly black area, and not to any resistance to selling heroin itself.

At the time of the sale to the agent, the defendant had more heroin than the two bags which he sold to Agent Horn. The agent testified that price was not discussed, since both the agent and the defendant already knew that $20 was the standard price for two bags of heroin.

"* * * The whole record presents a picture, not of a man who was overpersuaded by the police

into committing a crime which he otherwise would not have committed, but of one ready, able and willing to seize the opportunity to make a sale of the narcotics in his possession * * *." *State v. LeBrun,* 245 Or 265, 273, 419 P2d 948 (1966), *cert denied* 386 US 1011 (1967).

Affirmed.