Argued January 17, affirmed February 18, reconsideration
denied March 19, petition for review denied April 8, 1975

# STATE OF OREGON, *Respondent, v.* STEPHEN SCHINDLER (No. C-74-05-1522 Cr), *Appellant.*

531 P2d 915

*Darrell E. Bewley,* Portland, argued the cause for appellant. With him on the briefs was Francis F. Yunker, Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

Stephen Schindler, defendant herein, was jointly indicted with Matt Bob Freeman and George Andrew Lake for theft in the first degree. ORS 164.055. He was tried separately and convicted. On appeal he assigns a number of errors, including the denial of his motion for a directed verdict of acquittal, the failure to grant certain other motions, and certain jury instructions.

At some time over the weekend of May 3-6, 1974, the Amrick Suzuki Company warehouse in Portland was burglarized of ten new Suzuki and Rickman brand motorcycles. The Amrick Suzuki dealership office was located on North Lombard Street, its warehouse at the corner of Killingsworth and North Missouri.

On the afternoon of May 6, 1974, defendant saw James Shaw and codefendant George Lake walking and offered them a ride. Shaw testified that in the ensuing conversation Lake told defendant that he had several "hot" motorcycles for sale at $100 apiece. Defendant, according to Shaw, expressed an interest in the merchandise, and the three proceeded to the Lake residence where they inspected the motorcycles in the basement. Defendant soon left but indicated he would return because of his interest in a motorcycle.

Later in the day, defendant met one Michael Deardorff, the state's chief witness. Deardorff testified to the following effect at trial: Defendant told Deardorff that he knew where a Suzuki 250, still in its crate, could be bought for $100. Defendant was "very intent" on consummating the transaction. Deardorff testified:

"A   He [defendant] told me that he had the

money on him and that * * * if I would pay him back the next day * * * then he would just go over and buy it for me * * *."

Defendant and Deardorff then drove to the Lake residence to inspect the motorcycles. George Lake told Deardorff that the Suzuki 250 had been sold, but that he could purchase a Rickman for the same price, which was $80. Lake also informed Deardorff that the motorcycles were "hot." When Lake indicated that he could not furnish a title or bill of sale to Deardorff, defendant volunteered that he (defendant) would give a bill of sale.

After Deardorff and defendant left the Lake residence, defendant told Deardorff that the $20 price discrepancy was due to his own desire to make "a little bit extra" on the sale. The two agreed that Deardorff, if he decided to make the purchase, would pay $100.

After Deardorff and defendant parted, Deardorff proceeded to a police station and related the night's events to a detective. He was given $100 and instructed to purchase the motorcycle offered him.

Deardorff then returned to defendant's residence and told him that he had decided to buy the Rickman. Defendant informed him that the Rickman had been sold but that a Suzuki 250 was available for the same price. Deardorff agreed to purchase the Suzuki.

Also during this conversation, defendant said that he himself had bought another of the motorcycles at Lake's and traded it for a red GTO automobile that was now in front of his house. James Shaw testified that defendant told him the same thing.

Deardorff and defendant then returned to the Lake residence. This time Deardorff dealt with one

Freeman, the other codefendant, who lived with Lake. After first quoting him a price of $80 on the Suzuki, Freeman demanded $100 for the motorcycle, which Deardorff paid.

Subsequently, the motorcycle was loaded into James Shaw's pickup and, at defendant Schindler's suggestion, taken to his own residence until Deardorff could make further arrangements. Shaw and defendant unloaded the cycle and placed it in defendant's garage. Upon leaving, Deardorff told defendant that he would pay him the agreed $20 later in the week.

A short while later, Deardorff returned to Schindler's residence with a pickup truck. Defendant came out and told Deardorff to turn off the engine so as not to arouse suspecion. Defendant then loaded the motorcycle into the pickup. Deardorff took it to the police station where it was identified by serial number as stolen property.

■■ Defendant first challenges the overruling at trial of his motion for a directed verdict of acquittal. In considering such, we review the evidence in the light most favorable to the state, and will sustain the trial court's action if there is any substantial evidence to support the verdict of guilt beyond a reasonable doubt. *See, State v. Miller,* 14 Or App 608, 513 P2d 1199, Sup Ct *review denied* (1973) ; *State v. Krummacher,* 15 Or App 234, 515 P2d 412 (1973), *rev'd on other grounds* 269 Or 125, 523 P2d 1009 (1974) ; *State v. Gross,* 19 Or App 187, 526 P2d 1050 (1974).

Based on the foregoing facts we conclude the motion was correctly denied.

Defendant also asserts that the state did not show that any motorcycle was stolen from Gene Jurick,

and that such constitutes a failure of proof. The indictment alleges the corpus delicti to consist of "one (1) Suzuki RL 250 motorcycle, of the total value of more than Two Hundred Dollars, the property of Gene Jurick." At the trial, testimony showed that the motorcycles taken in the burglary were the property of "Amrick Suzuki, Inc." Gene Jurick and a business associate owned all the stock in said corporation.

■■ A variance between the indictment and proof presented at trial does not constitute reversible error unless such variance was material or prejudicial to the defendants in presenting their defenses. *State v. Hanson/Hughes,* 14 Or App 586, 513 P2d 1202, Sup Ct *review denied* (1973). Moreover, ORS 135.725 specifically declares that an erroneous allegation as to the person injured by a crime such as that committed herein is not material so long as the subject act is otherwise sufficiently described. *See, State v. Smith and Leonard,* 253 Or 280, 453 P2d 942 (1969), and authorities cited therein.

*State v. Nored,* 10 Or App 126, 498 P2d 839, Sup Ct *review denied* (1972), relied on by defendant, is not inconsistent with this rule, merely indicating that an allegation of ownership may be necessary to protect the defendant from being charged twice for the same offense. Defendant makes no claim that there is any such danger herein, nor can we conceive of any. The contention is without merit.

■ Defendant next asserts that there was a failure of proof in connecting the motorcycle purchased by Deardorff with the burglary. At trial, evidence was adduced to the following effect: (1) a number of Suzuki and Rickman motorcycles were stolen from the Amrick

warehouse; (2) several Suzuki and Rickman motor-cycles in new condition were observed in the basement of the Lake-Freeman residence very shortly after this burglary; (3) Deardorff was informed by Lake that the motorcycles in the basement were "hot"; (4) the Rickman motorcycle inspected by Deardorff on the Lake-Freeman premises had affixed to it a sticker bearing a North Lombard Street address—the street on which the Amrick dealership, as distinguished from its warehouse, was located; (5) a few hours after the sale to Deardorff, police found a registration tag on the Lake-Freeman premises bearing the serial number of one of the motorcycles taken in the burglary; and (6) Deardorff delivered the Suzuki motorcycle pur-chased from Freeman and taken from the Lake-Free-man basement to the police, who identified it by serial number as stolen property. We find such evidence suf-ficient to support an inference that the motorcycle pur-chased by Deardorff was taken as a part of the Amrick warehouse burglary.

■ Defendant next contends that there was a failure of proof that defendant was involved in theft of any kind under our criminal code. The evidence, as set forth above, viewed in the light most favorable to the state, is such that a jury could conclude that defendant was intimately involved in the sale, disposition and conceal-ment of property he knew or should have known was stolen, thereby rendering him guilty of theft by re-ceiving. *See, State v. Doster,* 247 Or 336, 427 P2d 413 (1967). The argument is without merit.

Defendant contends that it was error for the court to deny his motion to withdraw from the jury the question of whether defendant was involved in the actual theft of the motorcycle, and to give in his in-

structions the statutory definition of theft. He claims that such could easily have led the jury to assume that there was evidence of some actual involvement by defendant in the theft from the warehouse.

The 1971 legislature adopted a new Oregon Criminal Code. Oregon Laws 1971, ch 743. ORS 164.-015 now provides:

"A person commits theft when, with intent to deprive another of property or to appropriate property to himself or to a third person, he:

"* * * * *

"(5) Commits theft by receiving as provided in ORS 164.095."

ORS 164.095 provides:

"(1) A person commits theft by receiving if he receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft.

"(2) 'Receiving' means acquiring possession, control or title, or lending on the security of the property."

The Oregon Criminal Law Revision Commission in its Commentary stated:

"The draft follows the Model Penal Code by incorporating the traditionally distinct crime of receiving stolen property as part of the comprehensive 'theft' offense.

"The definition of 'receiving' is taken from Model Penal Code § 223.6(1). The commentary thereto stresses that the essential idea to be expressed in statutes prohibiting receiving stolen property is that of acquisition of control whether in the sense of physical dominion or of legal power to dispose. The definition is broad enough to cover 'constructive possession' and the activities of those

who buy stolen property, as well as persons who acquire title thereto otherwise than by purchase, and who make loans and advances on such property.

"Consolidation of receiving with other forms of theft provides the same advantages as other aspects of the unification of the theft concept. It reduces the opportunity for technical defenses based upon legal distinctions between the similar activities of stealing and receiving the fruits of the theft." Proposed Oregon Criminal Code 137, Art 14, § 129 (1970).

Viewed in the context of the foregoing, it is clear that the instruction was not erroneous.

In relevant part, the instructions delivered by the judge read as follows:

"Now, the defendant is charged with the crime of theft in the first degree. To prove this charge, the State must prove each of the following material elements beyond a reasonable doubt:

"That the defendant, Stephen Schindler, did unlawfully and knowingly commit theft of property, to-wit: a Suzuki RL-250 motorcycle, of the total value of more than $200, the property of Gene Jurick,

"That the theft was theft by receiving as defined in the statute,

"That the crime, if any, took place on or about May 6, 1974; and

"That the crime, if any, occurred in Multnomah County, Oregon.

"Oregon law defines theft as follows:

"A person commits theft when, with intent to deprive another of property or to appropriate property to himself or to a third person, he:

"(1) takes, appropriates, obtains or withholds such property from an owner thereof, or when he

"(2) commits theft by receiving as provided in ORS 164.095.

"Oregon law defines theft by receiving as follows:

"A person commits theft by receiving if he receives, retains, conceals or disposes of property of another knowing that the property was the subject of theft or if he buys, sells, or lends upon the security of the stolen property.

"'Receiving' means acquiring possession, control or title, or lending on the security of the property."

■ The judge thus explicitly stated that the issue to be decided was whether defendant was guilty of theft by receiving. His recitation of the general theft provision (ORS 164.015) was merely to provide statutory context for the theft-by-receiving provision incorporated thereunder in our criminal code. In *State v. Keffer,* 3 Or App 57, 471 P2d 438 (1970), we stated:

"As a general rule it is not erroneous for the court to instruct the jury by defining the crime in the language of the statute if the jury is not confused or misled thereby. See: 53 Am Jur, Trial § 639, p. 494; and 23 A 635, Criminal Law § 1194, pp. 493, 498. *State v. Livingston,* 2 Or App 587, 469 P2d 632 (1970). * * *" 3 Or App at 60.

The above-quoted instructions in the context of this case were neither confusing nor misleading. There was no error.

■ Defendant further objects to the following instruction which was based upon ORS 161.155 and ORS 161.160(1):

"A person is criminally liable for the conduct of another person constituting a crime if with the intent to promote or facilitate the commission of the crime he solicits or commands such other

person to commit the crime. It is no defense that such other person has not been prosecuted for or convicted of any crime based upon the conduct in question."

We note first the defendant was jointly indicted with Lake and Freeman on this charge and that there was substantial evidence indicating their joint involvement in the crime. However, we find it unnecessary to decide whether there is sufficient evidence in the record from which a jury could infer that defendant solicited another to commit a crime. The instruction was clearly not prejudicial. In *State v. Stark*, 7 Or App 145, 490 P2d 511 (1971), we declared:

"It is basic that jury instructions must be considered as a whole. *Kinney v. General Construction Co.*, 248 Or 500, 435 P2d 297 (1969). This means that if an instruction is confusing or misleading and a specific objection is made as to its sufficiency, the reviewing court must weigh the impact of the instructions in their entirety rather than piecemeal. *Parmentier v. Ransom*, 179 Or 17, 169 P2d 883 (1946); *Klebaum v. Mitchell*, 246 Or 196, 424 P2d 219 (1967); *Smith v. Fields Chevrolet*, 239 Or 233, 396 P2d 200 (1964); *Simmons v. Holm*, 229 Or 373, 367 P2d 368 (1961)." 7 Or App at 149.

In the context of an otherwise clear and unambiguous charge, we find no prejudice in the challenged instruction.

In *State v. Selby*, 73 Or 378, 144 P 657 (1914), the Supreme Court said:

"The defendant could not have been injured by the giving of the portion of said charge to which he objects. Courts should confine their charges to the facts of the case; but an abstract charge that states the law correctly cannot be the basis for

a reversal of the judgment appealed from, unless it appears to the appellate court that it did mislead, or may have misled, the jury to the prejudice of the appellant. We are satisfied that the portion of the charge criticised by the appellant did not mislead the jury." 73 Or at 389.

*See also: State v. Townsend,* 237 Or 527, 530, 392 P2d 459 (1964); *State v. Livingston,* 2 Or App 587, 593, 469 P2d 632 (1970).

We too are satisfied that the instruction did not mislead the jury.

Defendant's remaining assignments of error relate to the failure of the trial judge to withdraw certain matters from the jury's consideration, and the subsequent giving of certain instructions. In view of our previous discussion, we find it unnecessary to discuss them. They are without merit.

Affirmed.