Argued May 23, affirmed June 23, reconsideration denied
July 30, petition for review allowed September 16, 1975

STATE OF OREGON, *Respondent, v.* JIM
KORELIS (No. C74-10-3036 Cr), *Appellant.*

537 P2d 136

*J. Bradford Shiley,* Portland, argued the cause and filed the brief for appellant.

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

On October 4, 1974, defendant, Jim Korelis, was indicted, together with his brother, George Korelis, on one count of theft in the first degree and on a sec-

ond count of attempted theft in the first degree. The indictment read in relevant part as follows:

## "COUNT I

"The said defendants, on or about August 12, 1974, in the County of Multnomah, State of Oregon, did unlawfully and knowingly commit theft of one High Standard .22 caliber revolver, the property of Richard L. Rugg, by selling the said High Standard .22 caliber revolver, knowing that the said High Standard .22 caliber revolver was the subject of theft, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

## "COUNT II

"As part of the same act and transaction alleged in Count I herein, the defendant is accused by the Grand Jury of Multnomah County, State of Oregon, by this indictment of the crime of

### ATTEMPTED THEFT
### IN THE FIRST DEGREE

committed as follows:

"The said defendants, on or about August 12, 1974, in the County of Multnomah, State of Oregon, did unlawfully and knowingly *attempt to commit theft* of one Sankgo Super CM 600 home movie camera, the property of Portland Police Bureau, by buying the said Sankgo Super CM 600 home movie camera, knowing that the said Sankgo Super CM 600 home movie camera was the subject of theft, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

Defendant was convicted on both counts. The court suspended sentencing and placed him on probation for a period of five years. He appeals.

The facts are undisputed. On the afternoon of August 12, 1974, Annette Jolin, a Portland Police Bu-

reau undercover officer, went to the Lovejoy Grocery store for the purpose of selling a purportedly stolen movie camera to George Korelis. Actually, the camera was the property of the police bureau fence detail. As Officer Jolin greeted defendant, who was standing at the cash register, he asked her if she had anything to sell. Officer Jolin showed him the movie camera, told him it was "hot," and asked to speak to defendant's brother, George. Defendant replied that George was taking a nap and that she should return later.

Pursuant to a later phone conversation with George Korelis, Officer Jolin returned with the camera to the Lovejoy Grocery that evening. George first examined the camera and then motioned defendant to the back of the store. Both brothers proceeded to examine the camera thoroughly and conversed at some length in Greek, a language of which Officer Jolin had no understanding. Officer Jolin indicated that she wanted $100 for the camera. George Korelis, after further discussion in Greek with his brother, replied that the price was too high. Officer Jolin then expressed interest in a trade. George Korelis produced a .22 caliber revolver from the back room, and the discussion of terms continued. George said that the gun had been purchased from somebody who had come into the store. At some point, defendant returned to the cash register at the front of the store.

Officer Jolin refused a straight trade of the gun for her camera, demanding the gun plus some money. George told her to talk to defendant about money. She walked to the cash register and told defendant that she would like to get at least $15 or $20 besides the gun in exchange for the camera. Defendant refused, saying that he had no authority.

Officer Jolin then followed George Korelis to the back room of the store. As she produced the camera

from her purse, George grabbed the purse and discovered Officer Jolin's own gun. George and others in the back room then produced guns. At this point defendant was also in the room. Officer Jolin quickly consummated a straight trade with George of the camera for the gun, and left.

■ Defendant challenges the overruling of his motion for directed verdict of acquittal on a number of grounds. He first alleges that there was insufficient evidence to convict him on Counts I and II as an aider and abettor, as defined in ORS 161.155(2)(b).[①] The Oregon Criminal Law Revision Commission discussed the quantum of participation necessary to convict a defendant as an aider and abettor under this section as follows:

> "The terms 'aids' and 'abets' have been utilized in paragraph (b) without definition inasmuch as they have been interpreted in a number of Oregon cases. *State v. Rosser*, 162 Or 293, 344, 91 P2d 295 (1939), defined an 'aider and abettor' as 'one who advises, counsels, procures or encourages another to commit a crime, though not personally present at the time and place of the commission of the offense.' *State v. Start*, 65 Or 178, 182, 132 P 512 (1913), defined 'abet' as meaning 'to countenance, assist, give aid' and to include 'knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in the crime.' Accord, *State v. Wedemeyer*, 65 Or 198, 132 P 518 (1913)." Commentary, Proposed Oregon Criminal Code 13, § 13 (1970).

---

[①] ORS 161.155(2)(b):

"A person is criminally liable for the conduct of another person constituting a crime if:

"(2) With the intent to promote or facilitate the commission of the crime he:

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime * * *."

*See also: State v. Hightower,* 17 Or App 112, 520 P2d 470 (1974). Under this standard, and reviewing the evidence in the light most favorable to the prosecution, we find substantial evidence in our foregoing recitation of the facts to support a verdict of guilt beyond a reasonable doubt. *State v. Schindler,* 20 Or App 400, 531 P2d 915, Sup Ct *review denied* (1975).

■ Defendant next contends there was no proof that he had knowledge that the gun sold to Officer Jolin was stolen, and that he therefore could not be found guilty under Count I. Under our consolidated theft statutes, proof of belief that the subject property was stolen is sufficient to sustain a conviction for theft by receiving. ORS 164.095; Commentary, Proposed Oregon Criminal Code, supra at 137-38. In the absence of direct evidence, a jury may draw a reasonable inference that a defendant had reason to know of the stolen status of property from the facts and circumstances of the case. *State v. Thomas,* 13 Or App 164, 509 P2d 446 (1973). The evidence set forth at trial, including the undisputed fact that defendant participated in negotiations for the purchase of a camera he knew to be stolen in exchange for the gun ultimately traded to Officer Jolin, is sufficient to sustain such an inference. *State v. Schindler,* supra.

■ Defendant next alleges a variance between the indictment and the proof presented at trial. His claim at trial was as follows: (1) the indictment alleged that defendant *knew* the camera was stolen; (2) proof adduced at trial rendered this impossible, inasmuch as it was established that the camera was the property of the Portland Police Bureau. Thus, defendant was, at most, shown to have intentionally engaged in conduct constituting a substantial step toward committing theft, i.e., an attempt. That is all the indictment charges.

■ Since impossibility because of the fact that the subject property was not stolen does not constitute a defense to the crime of attempted theft, *State v. Niehuser,* 21 Or App 33, 533 P2d 834 (1975), it is obvious there was no error here.

Defendant next asks us to rule that whenever a governmental agent supplies to a defendant contraband which later constitutes the basis for a criminal charge against him, the court must find entrapment as a matter of law and grant a motion for judgment of acquittal on such grounds. We decline to do so.

The United States Supreme Court recently discussed the issue of entrapment in *United States v. Russell,* 411 US 423, 93 S Ct 1637, 36 L Ed 2d 366 (1973). In that case, an accused sought to defend against a charge of unlawfully manufacturing and selling a contraband drug on the ground that a government undercover agent had supplied an essential ingredient in the manufacturing process. The Court of Appeals reversed his conviction on the basis of entrapment. The Supreme Court described the Court of Appeals' rationale as follows:

"* * * [T]he court in effect expanded the traditional notion of entrapment, which focuses on the predisposition of the defendant, to mandate dismissal of a criminal prosecution whenever the court determines that there has been 'an intolerable degree of governmental participation in the criminal enterprise.' In this case the court decided that the conduct of the agent in supplying a scarce ingredient essential for the manufacture of a controlled substance established that defense." 411 US at 427.

The Court of Appeals' theory rested in part on cases relied upon by defendant here in support of his entrapment argument: *United States v. Bueno,* 470 F2d 154 (5th Cir 1972), *cert denied* 411 US 949

(1973); *United States v. Chisum,* 312 F Supp 1307 (CD Cal 1970).

In rejecting that view and reaffirming its traditional definition of entrapment, the court declared:

"* * * This Court's opinions in *Sorrells v. United States* [287 US 435, 53 S Ct 210, 77 L Ed 413, 86 ALR 249 (1932)] and *Sherman v. United States* [356 US 369, 78 S Ct 819, 2 L Ed 2d 848 (1958)] held that the principal element in the defense of entrapment was the defendant's predisposition to commit the crime. Respondent conceded in the Court of Appeals, as well he might, 'that he may have harbored a predisposition to commit the charged offenses.' 459 F. 2d, at 672. Yet he argues that the jury's refusal to find entrapment under the charge submitted to it by the trial court should be overturned and the views of Justices Roberts and Frankfurter, in *Sorrells* and *Sherman,* respectively, which make the essential element of the defense turn on the type and degree of governmental conduct, be adopted as the law.

"We decline to overrule these cases. * * *

"* * * * *

"Several decisions of the United States district courts and courts of appeals have undoubtedly gone beyond this Court's opinions in *Sorrells* and *Sherman* in order to bar prosecutions because of what they thought to be, for want of a better term, 'overzealous law enforcement.' But the defense of entrapment enunciated in those opinions was not intended to give the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it did not approve. The execution of the federal laws under our Constitution is confided primarily to the Executive Branch of the Government, subject to applicable constitutional and statutory limitations and to judicially fashioned rules

to enforce those limitations. We think that the decision of the Court of Appeals in this case quite unnecessarily introduces an unmanageably subjective standard which is contrary to the holdings of this Court in *Sorrells* and *Sherman.*" 411 US at 433, 435.

Having particular relevance to the case at bar are the court's further statements:

"*Sorrells* and *Sherman* both recognize 'that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution,' 287 U.S., at 441; 356 U.S. at 372. Nor will the mere fact of deceit defeat a prosecution, see, *e.g., Lewis v. United States,* 385 U.S. 206, 208-209 (1966), for there are circumstances when the use of deceit is the only practicable law enforcement technique available. *It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play.*" (Emphasis supplied.) 411 US at 435-36.

Defendant cites no Oregon authority in support of his position, nor does our research disclose any. Rather, such authority is closely aligned with the position of the United States Supreme Court, as discussed above. ORS 161.275, a codification of prior case law (see Commentary, Proposed Oregon Criminal Code, supra at 34) defines entrapment as follows:

"(1) The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the proscribed conduct because he was induced to do so by a law enforcement official, or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence to be used against the actor in a criminal prosecution.

"(2) As used in this section, 'induced' means

that the actor did not contemplate and would not otherwise have engaged in the proscribed conduct. *Merely affording the actor an opportunity to commit an offense does not constitute entrapment.*" (Emphasis supplied.)

*See also: State v. Gunn,* 15 Or App 174, 515 P2d 187, Sup Ct *review denied* (1973); *State v. Davis,* 14 Or App 422, 512 P2d 1366, Sup Ct *review denied* (1973); *State v. Williams,* 12 Or App 21, 503 P2d 1254 (1972), Sup Ct *review denied* (1973).

■ While this court has recognized that the evidence of entrapment can be so overwhelming that a trial judge must recognize it as a matter of law, *State v. Gunn,* supra, we do not find it on the facts of this case. The uncontradicted testimony of Officer Jolin, including, inter alia, her assertion that when she first entered the store *defendant asked her* if she had anything to sell, negates any claim that defendant was not predisposed to commit the crimes of which he was convicted. We find no error.

■ Finally, defendant attacks the failure of the trial judge to give a requested instruction. Not only was that instruction an incorrect statement of the law, but the instructions actually given were correct statements of the law. There was no error.

Affirmed.