586 So.2d 817 (1991)
Charles DAVIS
v.
STATE of Mississippi.
No. 90-KA-0477.
Supreme Court of Mississippi.
September 18, 1991.
Raymond L. Wong, Cleveland, for appellant.
Mike C. Moore, Atty. Gen., Mary Margaret Bowers, Sp. Ass't Atty. Gen., Jackson, for appellee.
En Banc.
*818 ROBERTSON, Justice, for the Court:

I.
Today's appellant brokered, then observed, the sale of two stolen rifles and has been convicted of receiving stolen property. He charges the prosecution never proved he had dominion and control of the rifles and, hence, in law he never "received" them. He overlooks the law that one who aids or abets the commission of a felony is guilty as a principal, and that abundant evidence before us shows appellant knew the guns were "hot" and forthrightly assisted companions in their sale.
We affirm.

II.

A.
On January 5, 1990, someone burglarized, looted and burned the home of the Marlin Russell, Jr., family in Quitman County, Mississippi, some five miles out from Marks. The thieves took from the Russell home four long guns, specifically:
a. a Savage 20 gauge 30-30 caliber over and under;
b. a Remington 700 .270 caliber with a Tasco scope;
c. a Remington 30-30 with Bushnell scope; and
d. a Revelation .22 caliber with scope.
Later that same day, Robert Earl Lynch and Aaron Lynch arrived in Clarksdale to visit Charles Davis, a friend of theirs. Davis, who was born April 28, 1958, was the Defendant below and is the Appellant here. The Lynch brothers arrived in Robert's 1977 red or maroon Oldsmobile. After a brief visit, Davis joined the Lynch brothers to go riding.
The trio proceeded south from Clarksdale and as they neared Alligator, Mississippi, one of the Lynch brothers asked Davis if he knew where they (the Lynch brothers) could get rid of some guns. Davis suggested that they go to see Marshall West, who lived near Deeson, Mississippi. The three left Alligator, Aaron Lynch driving since he had a driver's license and Robert did not. They drove along a country road and soon found West in his front yard.
Davis introduced the Lynch brothers to West. Aaron Lynch then went around to the trunk of the car, opened it, and unfolded a blanket or cover containing the four long guns, whereupon Davis first saw the guns. Davis admits at this point, "I didn't know they was stolen, but, after I seen them, I figured they was." In any event, Aaron Lynch engaged in a brief negotiation with West, which came to naught. It seems West did not have the cash to pay the price Aaron asked.
While at West's home, Davis saw an acquaintance, Clifton Selby, Jr., drive by. Selby lived about two and a half miles past West's place. Davis says he had already thought of Selby as a possible purchaser of the guns. In any event, the threesome got back into Robert Lynch's car and headed to Shelby with Davis driving. They caught up with Selby in Shelby. Davis first approached Selby and asked if he were interested in some guns, and Selby replied, "Yeah." Davis then said, "They hot, man." Davis then introduced Selby to the Lynch brothers. Selby promptly asked Aaron Lynch, "Was they hot, was they hot?" Aaron told him, "They was clean, that he got them on the other side, on the other side of Memphis." Selby told Aaron Lynch he was interested in two of the guns  the 30-30 and the .270  but he said he wanted to test fire them before buying them. The four left and went out to a deserted spot on Ferretti Road whereupon Selby, with the assistance of Aaron Lynch, loaded and fired the two rifles. Satisfied, Selby bought the guns from the Lynch brothers for $400.00. Shortly thereafter, Aaron Lynch paid Davis $5.00 for his trouble.
In due course, Bolivar County Sheriff's Investigator Billy Joe Estes got wind of the sale of the guns to Selby. He obtained issuance of a warrant for Davis' arrest, forwarded it to Clarksdale, where the Coahoma County Sheriff's Deputies took Davis into custody. The Lynch brothers were also arrested roughly simultaneously. On February 8, 1990, Davis gave Investigator *819 Estes a statement wholly consistent with the facts recited above.

B.
On March 13, 1990, the grand jurors of the First Judicial District of Bolivar County returned an indictment jointly charging Robert Earl Lynch, Aaron Lynch and Charles Davis "while acting in concert with each other" with receiving stolen property, to-wit: four specifically identified rifles. Miss. Code Ann. § 97-17-69 (1972). The day before trial, the Lynch brothers entered pleas of guilty, and, on April 5, 1990, Davis stood trial alone. The Lynch brothers did not testify. At all appropriate stages, Davis challenged the sufficiency of the evidence, particularly on the "knowledge" and "receiving or control" issues. In the end, the jury found Davis "guilty of receiving stolen property." The Circuit Court sentenced Davis to four years imprisonment.
Davis timely filed a motion for judgment of acquittal notwithstanding the verdict, or, in the alternative, for a new trial, charging inter alia, that the prosecution's proof was legally insufficient to establish that Davis "knew the property was stolen and he had had dominion or control of the property." On April 20, 1990, the Circuit Court denied the motion in its entirety. This appeal follows.

III.

A.
The legislature has by statute declared the act of receiving stolen property an offense against the peace and dignity of the people of this state and has delineated this offense in these words:
If a person buy or receive in any manner or on any consideration personal property of any value, feloniously taken away from another, knowing the same to have been so taken, he shall be guilty of receiving stolen goods ...
Miss. Code Ann. § 97-17-69 (1972). As with all criminal offenses, the prosecution may not procure a valid and enforceable conviction save it prove beyond a reasonable doubt each element of the offense. Doby v. State, 557 So.2d 533, 540 (Miss. 1990); Steele v. State, 544 So.2d 802, 808-09 (Miss. 1989). The Court below accepted this premise, as evidenced by Jury Instruction No. C-15A.
Once a jury has found a defendant guilty, however, our authority on appeal is by law considerably constricted. It matters not that we are not convinced beyond a reasonable doubt of the accused's guilt. We may not reverse so long as there is credible evidence in the record from which the jury could have found or reasonably inferred each element of the offense charged. See, e.g., Benson v. State, 551 So.2d 188, 192-93 (Miss. 1989); Jackson v. State, 551 So.2d 132, 136 (Miss. 1989); Christian v. State, 456 So.2d 729, 734 (Miss. 1984). It equally matters not that the evidence overwhelmingly establish that the defendant is guilty of other offenses. We may not affirm unless the evidence adequately undergirds conviction of the particular offense for which the accused has been indicted and tried.

B.
Against this backdrop, Davis first argues that the evidence is insufficient to establish the requisite mental state, that is, that he knew that the rifles were stolen. Here our law imports an objective standard:
If a person has knowledge from facts and circumstances which should convince a reasonable person that property has been stolen, in such situation the rule is that, in a legal sense, he knew the property was stolen.
Brown v. State, 281 So.2d 924, 926 (Miss. 1973); see also, Van v. State, 477 So.2d 1350, 1351 (Miss. 1985); Lumpkin v. State, 413 So.2d 386, 387 (Miss. 1982); Ellett v. State, 364 So.2d 669, 670 (Miss. 1978); Bennett v. State, 211 So.2d 520, 526 (Miss. 1968); Pettus v. State, 200 Miss. 397, 410, 27 So.2d 536, 540 (1946).
Today's facts and circumstances, known to Charles Davis on the afternoon of January 5, 1990, were such that a reasonable person should have known that the guns *820 were stolen. Davis admits that when he saw the guns at Marshall West's place, he "figured they was ... stolen." He later told Clifton Selby "they hot, man." Given the law and this evidence, we cannot take seriously Davis' argument that he did not know the guns were stolen.

C.
Of more concern is Davis' complaint regarding proof of the act which is central to the offense. The statute prescribes that, before he may be guilty of receiving stolen property, a defendant must "buy or receive in any manner or on any consideration personal property... ." No one suggests Davis bought the property. The question is whether he "received" the guns within the meaning and contemplation of the legislative prescription.
We read the words of a statute (or any other legal text) by their common and ordinary meaning. See, e.g., Wilson v. Wilson, 547 So.2d 803, 805 (Miss. 1989). Context is important, for in legal language, as in ordinary parlance, words mean different things in different contexts. See, e.g., Brown v. Brown, 574 So.2d 688, 691 (Miss. 1990); Segarra v. State, 430 So.2d 408, 411 (Miss. 1983). And so we accept the lawmakers' power to define words in ways that differ from what the dictioner or the English teacher or even the informed layman might say. See, e.g., Mississippi State Tax Commission v. Moselle Fuel Co., 568 So.2d 720, 723 (Miss. 1990); Pennock v. State, 550 So.2d 410, 412 (Miss. 1989). Even so, we doubt the average person thinks "receipt" ends the moment the felon receives the stolen goods, any more than the pass play ends when the receiver catches the football. It may be that the pass is technically received at the moment and spot on the field where it is caught, but knowing those isolated facts without more is worth little. Both quarterback and receiver get credit for the yardage covered by the entire play, and the blocker certainly earns an assist. More substantively, where the receiver is tackled is what tells us how much yardage we credit the offense.
"Receive" within the statute is not limited to physical receipt. Still, an accused acting alone is guilty under Section 97-17-69 only if, within the terms of the statute, he has performed some act with respect to it. Receipt of stolen property, as of the quarterback's pass, is continuing conduct and includes handling thereafter. The act encompasses a continuous course of receiving, if you will. We have long embellished receipt to include "control or dominion." Lewis v. State, 573 So.2d 713, 714 (Miss. 1990); Church v. State, 317 So.2d 386, 387 (Miss. 1975); Daniel v. State, 212 Miss. 223, 228, 54 So.2d 272, 274 (1951). In the case of Marlin Russell's guns, had Charles Davis acted alone, he would be guilty in the premises only if he received the guns "in any manner." Physical possession of the property is not required nor is exclusive control or dominion. Daniel v. State, 212 Miss. 223, 228, 54 So.2d 272, 274 (1951). It is adequate that the prosecution prove that the property was subject to the defendant's dominion and control.
In Church v. State, 317 So.2d 386 (Miss. 1975), the defendant called a would-be purchaser and offered some boots at a specified price per pair. The defendant advised the boots would be "brought to him after dark." Church v. State, 317 So.2d at 386. The defendant later called his purchaser and advised that the boots "were on the way" and gave the names of the persons who would deliver the boots. The boots were, in fact, delivered by the two named persons. The evidence established that the boots had been stolen from a store which had been burglarized and burned. We held the evidence legally sufficient although it was never shown that the defendant physically possessed stolen goods nor even that he ever saw them. Church v. State, 317 So.2d at 387. See also, 4 Wharton's Criminal Law, § 458 (Torcia Ed. 1981); Perkins and Boyce, Criminal Law, 395-96 (1982).
By way of contrast, proof that one stood by at the commission of a crime without taking steps to prevent it does not alone indicate participation or combination in a wrong done, although the person approves the act. Cochran v. State, 191 *821 Miss. 273, 276, 2 So.2d 822, 823 (1941). Guilt by association is neither a recognized nor tolerable concept in our criminal law. Pryor v. State, 239 So.2d 911, 912 (Miss. 1970); Matula v. State, 220 So.2d 833, 836 (Miss. 1969).
Davis strenuously argues that he never possessed or controlled guns, and in a certain sense this is so. No proof suggests he ever physically handled the guns. It is certainly stretching matters to say that Davis' riding in Robert Lynch's car or even his driving it constituted constructive possession, dominion or control. And it is true that once Davis introduced the Lynch brothers, first to Marshall West, and thereafter to Clifton Selby, Aaron Lynch took over and completely conducted the negotiations. Nothing before us suggests Davis enjoyed any prerogative to approve or accept an offer.
On the other hand, our law is clear that one who aids and abets another in the commission of an offense is guilty as a principal. Sayles v. State, 552 So.2d 1383, 1388-89 (Miss. 1989); Malone v. State, 486 So.2d 360, 363-64 (Miss. 1986); Shedd v. State, 228 Miss. 381, 386-87, 87 So.2d 898, 900 (1956). Accepting that receiving the stolen guns "in any manner" involves more than the momentary act of physical receipt and includes the handling of them and, here, preparation for disposing of the guns, we find Charles Davis a broker after a fashion, having substantially facilitated the Lynch brothers' continued dominion, control and ultimately, disposition of the guns. Davis aided the Lynch brothers in their handling of the guns as much as one who drives the getaway car facilitates a bank robbery, or, perhaps more aptly, one who helps the robber find a bank to rob, takes him through the door and "introduces" him to the teller.
The jury was correctly instructed that it might find Davis guilty if it found that he did
any act which is an element of the crime of receiving stolen property or immediately connected with it, or leading to its commission.[1]
The evidence before us is more than sufficient that a jury of reasonable and fairminded men and women could have found that Davis did such an act when, even according to his own version of the facts, he presented the Lynch brothers to West and then to Selby.
Oregon reached a similar result on analogous facts. State v. Korelis, 21 Or. App. 813, 537 P.2d 136 (1975). There, Jim Korelis was indicted, along with his brother, for theft and attempted theft in the first degree. Korelis, 537 P.2d at 137. At trial, the state proved Korelis' only participation in the crime was that he aided his brother in negotiating a trade for stolen property. Korelis, 537 P.2d at 138. Additionally, the state established Korelis knew the camera was "hot." Korelis, 537 P.2d at 138. On these facts, the Court found this evidence sufficient to affirm. Korelis, 537 P.2d at 139.

IV.
Davis presents two additional points on this appeal which, for all practical purposes, are disposed of adversely to him by what we have said above. These points require no further discussion.
CONVICTION OF RECEIVING STOLEN PROPERTY AND SENTENCE OF FOUR YEARS IMPRISONMENT AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER and PITTMAN, JJ., concur.
*822 BANKS, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ.
BANKS, Justice, dissenting:
Because I believe that an ordered system of justice requires that an accused be proven guilty of the crime laid in the indictment and not convicted merely because he is in all probability guilty of some similar crime, I dissent.
It defies logic, reason and our precedents that one should be found guilty of receiving stolen property with respect to goods which he has never purchased, received, nor in any manner gained or exercised dominion and control over. See, e.g., Lewis v. State, 573 So.2d 713 (Miss. 1990) ("In our state to be found guilty of receiving stolen property the state must prove that the accused had control or dominion over the custody of the goods."); Reese v. State, 198 Miss. 843, 23 So.2d 694 (1945). Nor can one reasonably be convicted of aiding and abetting the receipt of stolen goods on proof which establishes without contradiction that those whom he allegedly aided were already in possession of the goods in question when he came in contact with them and never surrendered either possession or control to the accused. This is especially so where there is no evidence offered as to how those in possession gained possession.
I do not argue that the state was required to prove that Davis took physical possession. Davis does not and need not quarrel with Church v. State, 317 So.2d 386 (Miss. 1975). There the defendant called the buyer, set the price for the goods and told the buyer when and where the goods would be delivered, all without any apparent consultation with others. A reasonable fact-finder could conclude, therefore, that the goods in question were subject to Church's dominion and control. Daniels v. State, 212 Miss. 223, 54 So.2d 272 (1951) is also inapposite. There the defendant actually took possession of the stolen ring, albeit briefly, and secreted it to avoid detection.
The majority does not cite a single case in which a person has been convicted of receiving stolen goods without a showing that the accused either took possession or exercised dominion and control. No authority whatever is cited for the novel suggestion that a buyer facilitates the exercise of dominion and control sufficient to constitute receiving by pointing out prospective purchasers to those who would sell stolen goods. The gravamen of the crime is receipt or purchase. Lewis v. State, supra, 573 So.2d at 714. The exercise of dominion and control is merely evidence of receipt or purchase and, standing alone, is inadequate to prove receipt or purchase. Id. While sale may be an indicia of dominion and control, at that point the goods have already been received or purchased by the seller. Selling stolen property is not designated as a crime by our legislature.[1]
*823 Just as compelling is the fact that there is no evidence whatever that the Lynches did not steal the guns in question themselves. There is not a shred of evidence that they purchased or received these guns in any manner other than the burglary. On this record the Lynches could not be convicted of receiving stolen property. "One who steals property cannot be convicted of receiving, concealing or aiding in concealing stolen property." Anderson v. State, 232 So.2d 364 (Miss. 1970) (Overruled only as to one who is an accessory before the fact to the larcency and later receives the goods in Knowles v. State, 341 So.2d 913, 916 (Miss. 1977)); See also, Hentz v. State, 489 So.2d 1386 (Miss. 1986). Whatley v. State, 490 So.2d 1220 (Miss. 1986) ("Without any evidence showing that Whatley either received or stole the generator, the jury was left with mere possession of stolen property. That is not a crime under 97-17-69."). If the Lynches could not have been convicted of receiving stolen property, it follows that Davis could not have been so convicted.
Davis may have aided Selby in receiving stolen property. He may have conspired with Selby and the Lynches so that Selby could receive stolen property. He did not aid or abet the Lynches in receiving stolen property. In the words of the substantive instruction given to the jury, he committed no act which was an element of the crime of receiving stolen property by the Lynches, or immediately connected with it or leading to its commission. That was the crime with which he was charged. He should have been acquitted. I would reverse and render.
DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ., join this dissent.
NOTES
[1] Instruction S-3 in full reads as follows:

The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, wilfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you believe from the evidence, beyond a reasonable doubt, that the defendant, CHARLES DAVIS, did wilfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of receiving stolen property or immediately connected with it, or leading to its commission, then and in that event, you should find the defendant guilty as charged.
[1] This fact makes State v. Korelis, 21 Or. App. 813, 537 P.2d 136 (1975), cited by the majority, inapposite. In Oregon the legislature has provided that selling property knowing it to have been stolen constitutes the crime of theft. The applicable statute reads as follows:

Theft by receiving. (1) A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft. (Italics supplied.)
ORS 164.095.
In Korelis the defendant was convicted of one count of theft and one count of attempted theft for aiding his brother in negotiating with an undercover officer who presented a purported "hot" camera for trade. The officer received in trade a gun which turned out to be stolen. Defendant was convicted of theft "by selling" the gun "knowing that [it] was the subject of theft" and of "attempt to commit theft ... by buying [the camera] knowing that [it] was the subject of theft." Id. at 137-138. It is obvious that the charges, in accordance with the Oregon statutory scheme, are different than those in the case at bar. Receiving or buying was not a legally pertinent issue with respect to the charge involving the gun which was disposed of in the trade to the officer. Receiving or purchasing was not a fact in dispute with regard to the camera. There defendant claimed entrapment and that the camera was not in fact stolen.
It would be well if our legislature would consider modifying our theft and stolen property laws to more adequately cover situations such as this. See Pennock v. State, 550 So.2d 410, 413 fn. 5 (Miss. 1989).